# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *Italia Foods, Inc. v. Sun Tours, Inc.*, 2011 IL 110350

---

| | |
|---|---|
| Caption in Supreme Court: | ITALIA FOODS, INC., Appellee, v. SUN TOURS, INC., d/b/a Hobbit Travel, *et al.*, Appellants. |

| | |
|---|---|
| Docket No. | 110350 |
| Filed | June 3, 2011 |
| Rehearing denied | September 26, 2011 |

| | |
|---|---|
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Under the federal Telephone Consumer Protection Act of 1991, the Illinois General Assembly did not have to enact enabling legislation before a private action could be brought under the Act in state court, since, under the "acknowledgment approach" followed by the majority of jurisdictions, state courts must, as a matter of supremacy clause jurisprudence, remain open to litigants with federal causes of action and are not free to refuse enforcement. |

| | |
|---|---|
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Lake County, the Hon. Mitchell L. Hoffman, Judge, presiding. |

| | |
|---|---|
| Judgment | Certified question answered; cause remanded. |

Counsel on Appeal

Michael D. Richman and Henry Pietrkowski, of Reed Smith LLP, of Chicago, and Charles W. Smith, of Smith & Laluzerne, Ltd., of Waukegan, for appellants.

Michael T. Reagan, of Ottawa, Phillip A. Bock and Robert M. Hatch, of Bock & Hatch, LLC, of Chicago, and Brian J. Wanca and David M. Oppenheim, of Anderson + Wanca, of Rolling Meadows, for appellee.

Justices

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Thomas, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1    The circuit court of Lake County certified several questions of law for interlocutory appeal (Ill. S. Ct. R. 308 (eff. Feb. 1, 1994)). The appellate court concluded that its answers to the following two questions were dispositive. First, does the federal Telephone Consumer Protection Act of 1991 (TCPA) (47 U.S.C. § 227 (2000)) require that the Illinois General Assembly enact legislation to enable Illinois state courts to hear and enforce private TCPA claims? The second certified question asks essentially whether the TCPA claim in this case is assignable under Illinois law. The appellate court answered the first question in the negative and the second question in the affirmative. 399 Ill. App. 3d 1038. We allowed leave to appeal (Ill. S. Ct. R. 315 (eff. Feb. 26, 2010)). For the following reasons, we agree with the appellate court's answer to the first question, vacate the court's discussion of assignability, and remand the cause to the appellate court for further proceedings.

¶ 2                                I. BACKGROUND

¶ 3    In June 2003, Eclipse Manufacturing Company filed its original class action complaint against defendant Sun Tours, Inc., doing business as Hobbit Travel. In February 2004, Eclipse filed a first amended complaint adding defendant Paul Grosso, who is Sun Tours' president and sole shareholder. Eclipse alleged that in July and August 2002 defendants sent via facsimile, *i.e.*, "faxed," Eclipse four unsolicited advertisements for discount travel. In August 2007, Eclipse's president and sole shareholder, Robert Hinman, filed the second amended complaint replacing Eclipse as the named plaintiff. Hinman alleged that the same four facsimiles (faxes) were sent to him and not to Eclipse. He also alleged that in November 2005, he sold Eclipse's stock, but expressly retained the right to pursue the TCPA claim based on its assignment from Eclipse to Hinman.

¶ 4    Defendants moved to dismiss the second amended complaint. Defendants contended, *inter alia*, that Hinman's claims were time-barred because he brought them over five years

after he allegedly received the four faxes. In January 2008, over defendants' objection, the circuit court granted Italia Foods, Inc., leave to file the instant third amended complaint, in which Italia substituted itself for Hinman. Italia alleged that from June 2005 through April 2007 defendants sent Italia 28 unsolicited faxes of discount travel advertisements. Further, defendants faxed the same and similar advertisements to more than 39 other recipients without first receiving their permission or invitation. Italia claimed that defendants: (1) violated the TCPA, and (2) committed common law conversion.[1]

¶ 5        Defendants filed a combined motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2008)). Defendants asserted that private TCPA claims are not cognizable in Illinois state courts. 735 ILCS 5/2-615 (West 2008). Defendants also contended that TCPA claims are not assignable as a matter of Illinois law. *Id.* Defendants alternatively sought dismissal arguing that Italia's TCPA claim was time-barred. 735 ILCS 5/2-619 (West 2008).[2]

¶ 6        The circuit court denied defendants' motion. However, the court certified the following questions for interlocutory review pursuant to Supreme Court Rule 308 (Ill. S. Ct. R. 308 (eff. Feb. 1, 1994)):

> "I. Does the language and purpose of the federal Telephone Consumer Protection Act ('TCPA') require that the Illinois General Assembly enact enabling legislation before private TCPA claims can be brought and enforced in Illinois state courts?
>
> II. Are the TCPA claims alleged in this case 'statutory penalties' under Illinois law? And if so:
>
> > (a) Are those claims assignable under Illinois law?
> >
> > (b) Does Illinois' two year statutory penalty limitations period [citation] apply to such claims, as opposed to [the federal limitations period for civil actions]?
>
> III. If the claim is not assignable, then should absent class members' putative claims against defendants be treated as tolled when no class representative with proper standing represented the putative class for a 27-month period?"

¶ 7        The appellate court allowed defendants' application for leave to appeal (Ill. S. Ct. R. 308 (eff. Feb. 1, 1994)). The court answered the first question in the negative. 399 Ill. App. 3d at 1043-63. As to the second certified question, the appellate court concluded that the TCPA claim in this case is assignable under Illinois law and that, based on the admitted facts, the court need not answer subsection (b) concerning the appropriate statute of limitations. 399 Ill. App. 3d at 1063-72. Lastly, because the appellate court concluded that the TCPA claim in this case is assignable, the court did not address the third certified question. 399 Ill. App.

---

[1]The original and first amended complaints included a third count claiming a violation of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2002)). However, the circuit court granted defendants' motion to dismiss this count with prejudice, and Italia does not appeal therefrom.

[2]Defendants also raised sections 2-615 and 2-619 challenges to Italia's common law conversion claim.

3d at 1072. We allowed defendants' petition for leave to appeal (Ill. S. Ct. R. 315(a)).

¶ 8                                    II. ANALYSIS

¶ 9      Because this appeal concerns questions of law certified by the circuit court pursuant to Supreme Court Rule 308 (Ill. S. Ct. R. 308 (eff. Feb. 1, 1994)), our review is *de novo*. *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 57-58 (2007). Our review is *de novo* also because this appeal arose in the context of an order denying a section 2-619.1 motion to dismiss. See *Morris v. Harvey Cycle & Camper, Inc.*, 392 Ill. App. 3d 399, 402 (2009); *McGee v. Snyder*, 326 Ill. App. 3d 343, 347 (2001).

¶ 10              A. Illinois Circuit Court Jurisdiction Over TCPA Claims

¶ 11     The first certified question asks whether the TCPA requires the Illinois General Assembly to enact legislation to enable Illinois state courts to hear and enforce private TCPA claims. Defendants contend that the General Assembly is required to so act. It is undisputed that the legislature has not enacted legislation authorizing TCPA suits in Illinois state courts. Therefore, defendants ask this court to direct that Italia's TCPA claim be dismissed with prejudice. This issue is a matter of statutory construction, which we analyze within a settled framework.

¶ 12     " 'Our task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive.' " *Negonsott v. Samuels*, 507 U.S. 99, 104 (1993) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570 (1982)); accord *County of Du Page v. Illinois Labor Relations Board*, 231 Ill. 2d 593, 603-04 (2008) (stating "plain language" canon of statutory construction); *In re Detention of Lieberman*, 201 Ill. 2d 300, 307-08 (2002) (same). "The definition of words in isolation, however, is not necessarily controlling in statutory construction. A word in a statute may or may not extend to the outer limits of its definitional possibilities." *Dolan v. United States Postal Service*, 546 U.S. 481, 486 (2006). Thus, in construing a statute, a court must not focus exclusively on a single sentence or phrase, but must view the statute as a whole. The court may consider the reason for the law, the problems sought to be remedied, and the purposes to be achieved. See *United States National Bank of Oregon v. Independent Insurance Agents of America, Inc.*, 508 U.S. 439, 454-55 (1993); *County of Du Page*, 231 Ill. 2d at 604; *Williams v. Staples*, 208 Ill. 2d 480, 487 (2004); *Lieberman*, 201 Ill. 2d at 308.

¶ 13     According to its legislative history, Congress enacted the TCPA to address telemarketing abuses attributable to the use of automated telephone calls to devices including telephones, cellular telephones, and fax machines. Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 1991 U.S.C.C.A.N. (105 Stat. 2394) 1969-70. When the TCPA was enacted, over 40 states had legislation restricting unsolicited telemarketing. However, those state measures had limited effect because states lack jurisdiction over interstate calls. *Id.* at 1970. The purposes of the TCPA "are to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of [fax] machines and automatic dialers." *Id.* at 1968; see *Portuguese American Leadership Council of the United States, Inc.*

*v. Investors' Alert, Inc.*, 956 A.2d 671, 673-74 (D.C. 2008); *R.A. Ponte Architects, Ltd. v. Investors' Alert, Inc.*, 857 A.2d 1, 9, 11-12 (Md. 2004); *Schulman v. Chase Manhattan Bank*, 710 N.Y.S.2d 368, 369 (N.Y. App. Div. 2000).

¶ 14        The TCPA provides three methods of enforcement. First, a state attorney general may bring a civil action on behalf of a state's residents. 47 U.S.C. § 227(f)(1). Second, the Federal Communications Commission (FCC) may bring a civil action for violations of the TCPA. *Id.* §§ 227(f)(3), (f)(7). Federal district courts have exclusive jurisdiction over TCPA claims brought by state attorneys general and the FCC. *Id.* § 227(f)(2). Third, individuals may bring actions on their own behalf in state courts. *Id.* §§ 227(b)(3), (c)(5).[3]

¶ 15        The TCPA provides in relevant part: "It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States *** to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." *Id*. § 227(b)(1)(C). Subsection (b)(3) provides as follows:

> "(3) Private right of action.
>
> A person or entity may, *if otherwise permitted by the laws or rules of court of a State*, bring in an appropriate court of that State–
>
> > (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
> >
> > (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
> >
> > (C) both such actions." (Emphasis added.) *Id.* § 227(b)(3).

If the court finds that the defendant "willfully or knowingly violated" this section, the court has the discretion to award an amount up to three times the amount specified above. *Id.*[4]

¶ 16        The first certified question concerns the congressional intent underlying the phrase "if otherwise permitted by the laws or rules of court of a State." *Id.* § 227(b)(3). Defendants contend that this statutory language requires that the Illinois General Assembly enact legislation to enable Illinois circuit courts to hear private TCPA claims. Because the legislature has not enacted such a law, defendants argue that circuit courts may not hear these claims. On the other hand, Italia contends that Illinois circuit courts may hear private TCPA

---

[3]The majority of federal courts that have considered the issue have held that they lack jurisdiction to hear private TCPA actions. 399 Ill. App. 3d at 1046 n.4; *Portuguese American Leadership Council*, 956 A.2d at 675 n.3. However, several courts of appeal have held that federal courts may hear private TCPA claims when subject matter jurisdiction is based on diversity. 399 Ill. App. 3d at 1046 n.4 (collecting cases).

[4]The TCPA also includes a subsection that protects residential telephone subscribers' privacy rights against telephone solicitations. This subsection also establishes a private right of action, which likewise applies "if otherwise permitted by the laws or rules of court of a State." *Id.* § 227(c)(5).

claims with no need for enabling legislation.

¶ 17    Where, as here, resolution of a question of federal law turns on a statute and congressional intent, we look first to the statutory language and then to the legislative history if the statutory language is ambiguous. See *Toibb v. Radloff*, 501 U.S. 157, 162 (1991). "Ambiguity is a creature not of definitional possibilities but of statutory context." *Brown v. Gardner*, 513 U.S. 115, 118 (1994). A statute is ambiguous if it is capable of being reasonably understood in two or more different ways. See *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440 (2010); *Williams*, 208 Ill. 2d at 489-90; *Khan v. United States*, 548 F.3d 549, 556 (7th Cir. 2008).

¶ 18    In the present case, we conclude that the statutory phrase "if otherwise permitted by the laws or rules of court of a State" is ambiguous. Many courts from across the country have been faced with construing this statutory language. These decisions indicate that it is unclear what, if any, state legislative action is required in order for state courts to hear private TCPA claims. Courts have used one of three interpretative approaches in construing this statutory language. See, *e.g.*, *MLC Mortgage Corp. v. Sun America Mortgage Co.*, 2009 OK 37, ¶ 11, 212 P.3d 1199; *Consumer Crusade, Inc. v. Affordable Health Care Solutions, Inc.*, 121 P.3d 350, 353 (Colo. App. 2005).

¶ 19    1. *"Acknowledgment" Approach*

¶ 20    The "acknowledgment" approach construes the phrase "if otherwise permitted by the laws or rules of court of a State" to merely acknowledge that states have the right to structure their own court systems; that neutral state laws and court rules concerning state court jurisdiction and procedure apply to TCPA claims; and that state courts are not obligated to change their procedural rules to accommodate TCPA claims. *Consumer Crusade*, 121 P.3d at 354; *Ponte*, 857 A.2d at 11; *Schulman*, 710 N.Y.S.2d at 372. Under the "acknowledgment" approach, state enabling legislation is not necessary for parties to assert private TCPA claims in state courts (*MLC Mortgage*, 2009 OK 37, ¶ 12; *Condon v. Office Depot, Inc.*, 855 So. 2d 644, 647 (Fla. Dist. Ct. App. 2003)), and no state can refuse to entertain that claim because it is a federal cause of action. *Consumer Crusade*, 121 P.3d at 354; *Ponte*, 857 A.2d at 9.

¶ 21    Several years ago, our appellate court construed the "if otherwise permitted" clause according to the acknowledgment approach. In *First Capital Mortgage Corp. v. Union Federal Bank of Indianapolis*, 374 Ill. App. 3d 739 (2007), the parties agreed that the court "should interpret the phrase as an acknowledgment that state courts need not change procedural rules to accommodate claims under the [TCPA]," and the court held that private TCPA claims were cognizable in Illinois circuit courts. *Id.* at 741-72; see *MLC Mortgage*, 2009 OK 37, ¶ 12 n.21 (citing case for Illinois being "acknowledgment state"). In the present case, the appellate court, after exhaustive analysis, reached the same conclusion (399 Ill. App. 3d at 1050-53, 1056-61), which Italia urges us to uphold. We agree with the conclusion reached by our appellate court in *First Capital Mortgage* and the present case, and adopt the acknowledgment approach to construing the statutory phrase "if otherwise permitted by the laws or rules of court of a State."

¶ 22    "The 'acknowledgment' approach is grounded in the Supremacy Clause of the United

States Constitution." *MLC Mortgage*, 2009 OK 37, ¶ 12; see *Condon*, 855 So. 2d at 647. The supremacy clause provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof *** shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. The United States Supreme Court has explained:

> "Federal law is enforceable in state courts not because Congress has determined that federal courts would otherwise be burdened or that state courts might provide a more convenient forum–although both might well be true–but because the Constitution and laws passed pursuant to it are as much laws in the States as laws passed by the state legislature. The Supremacy Clause makes those laws 'the supreme Law of the Land,' and charges state courts with a coordinate responsibility to enforce that law according to their regular modes of procedure." *Howlett v. Rose*, 496 U.S. 356, 367 (1990).

Therefore: "The obligation on State courts to hear Federal causes of action is not self-imposed by enabling legislation, but arises under the supremacy clause." *Mulhern v. MacLeod*, 808 N.E.2d 778, 780 (Mass. 2004).

¶ 23        Corollaries follow from the supremacy clause. First, absent a valid excuse, a state court may not deny a federal right when the parties and the controversy are properly before it. *Howlett*, 496 U.S. at 369. The supremacy clause forbids state courts to disassociate themselves from federal law because they disagree with its substance or because they refuse to recognize the superior authority of federal law. *Id.* at 371. By virtue of the United States Constitution, state courts must remain open to litigants with federal causes of action " 'on the same basis that they are open to litigants with causes of action springing from a different source.' " *Id.* at 372 (quoting *Miles v. Illinois Central R.R. Co.*, 315 U.S. 698, 703-04 (1942)).

¶ 24        Second, a state court may refuse jurisdiction of a federal claim based on "a neutral state rule regarding the administration of the courts." *Howlett*, 496 U.S. at 372.

> "The requirement that a state court of competent jurisdiction treat federal law as the law of the land does not necessarily include within it a requirement that the State create a court competent to hear the case in which the federal claim is presented. The general rule, 'bottomed deeply in belief in the importance of state control of state judicial procedure, is that federal law takes the state courts as it finds them.' [Citations.] The States thus have great latitude to establish the structure and jurisdiction of their own courts. [Citations.] In addition, States may apply their own neutral procedural rules to federal claims, unless those rules are pre-empted by federal law." *Id.*

However, when a state court has jurisdiction "adequate and appropriate under established local law to adjudicate" a federal claim, the court is "not free to refuse enforcement." *Testa v. Katt*, 330 U.S. 386, 394 (1947).

¶ 25        The United States Supreme Court has declared: "These principles are fundamental to a system of federalism in which the state courts share responsibility for the application and

enforcement of federal law." *Howlett*, 496 U.S. at 372-73. We conclude that the statutory phrase "if otherwise permitted by the laws or rules of court of a State" simply acknowledges this supremacy clause jurisprudence. See, *e.g.*, *Ponte*, 857 A.2d at 9-10 (collecting cases).

¶ 26      Our construction of the "if otherwise permitted" clause finds support in the TCPA's legislative history. In introducing the bill containing the private cause of action now codified at 47 U.S.C. § 227(b)(3), Senator Hollings explained as follows:

> "The [bill] contains a private right-of-action provision that will make it easier for consumers to recover damages from receiving these computerized calls. The provision would allow consumers to bring an action in State court against any entity that violates the bill. *The bill does not, because of constitutional constraints, dictate to the States which court in each State shall be the proper venue for such an action, as this is a matter for State legislators to determine.* Nevertheless, it is my hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court. The consumer outrage at receiving these calls is clear. Unless Congress makes it easier for consumers to obtain damages from those who violate this bill, these abuses will undoubtedly continue.
>
> Small claims court or a similar court would allow the consumer to appear before the court without an attorney. The amount of damages in this legislation is set to be fair to both the consumer and the telemarketer. However, it would defeat the purposes of the bill if the attorneys' costs to consumers of bringing an action were greater than the potential damages. I thus expect that the States will act reasonably in permitting their citizens to go to court to enforce this bill." (Emphasis added.) 137 Cong. Rec. 30,821-22 (1991) (quoted in *Portuguese American Leadership Council*, 956 A.2d at 677, and *Ponte*, 857 A.2d at 13-14).

Senator Hollings' explanation of the TCPA's private cause of action makes clear that the "if otherwise permitted" clause simply reflects supremacy clause jurisprudence. "The substantive issue of whether the federal cause of action should be entertained in the appropriate state court was *not* a matter left to state legislators." (Emphasis in original.) *Ponte*, 857 A.2d at 14. Rather, Congress "expected state legislation to address issues like venue." *Condon*, 855 So. 2d at 648.

¶ 27      Indeed, we observe that Illinois Supreme Court Rules 281 through 289 establish procedures specifically for small claims actions–the type of proceeding Senator Hollings envisioned for private TCPA claims. These are neutral state rules regarding the administration of the courts (see *Howlett*, 496 U.S. at 372) to which the statutory language "if otherwise permitted by the laws or rules of court of a State" expressly refers.


¶ 28                              2. *"Opt In" Approach*

¶ 29      Defendants urge us to utilize the "opt in" approach in construing the statutory phrase "if otherwise permitted by the laws or rules of court of a State." Under the "opt in" approach, the TCPA did not create an immediately enforceable cause of action. Rather, Congress intended to deprive state courts of jurisdiction over private TCPA causes of action unless and until a state takes affirmative steps, either by legislation or court rule, to "opt in" the TCPA,

*i.e.*, to exercise jurisdiction over private TCPA claims. See, *e.g.*, *MLC Mortgage*, 2009 OK 37, ¶ 14; *Consumer Crusade*, 121 P.3d at 353. We reject defendants' contention because the "opt in" approach "runs afoul" of the supremacy clause. See *Condon*, 855 So. 2d at 647.

¶ 30    Initially, the very definition of the "opt in" approach gives pause. There is a conceptual tension between the rule of presumed enforceability derived from the supremacy clause and an interpretation of the TCPA that would require the Illinois General Assembly to enact legislation to enable Illinois circuit courts to hear private TCPA actions. See *Portuguese American Leadership Council*, 956 A.2d at 676-77.

¶ 31    Further, this presumption of enforceablility is bolstered by Illinois constitutional law. This court has repeatedly recognized that the Illinois Constitution, not the legislature, confers jurisdiction on Illinois circuit courts. Pursuant to article VI, section 9, of our constitution, the circuit courts have jurisdiction over all justiciable matters. Ill. Const. 1970, art. VI, § 9; *People ex rel. Alvarez v. Skryd*, 241 Ill. 2d 34, 40 (2011); *People v. Davis*, 156 Ill. 2d 149, 156 (1993). Therefore, the premise of the "opt in" approach–that the Illinois General Assembly is required to enact legislation to "enable" Illinois circuit courts to hear the justiciable matter created by Congress, *i.e.*, TCPA actions–is especially problematic.

¶ 32    We reject defendants' arguments in support of the "opt in" approach. Defendants argue that the plain language of the statutory phrase "if otherwise permitted by the laws or rules of court of a State" explicitly contemplates enabling legislation. However, as we earlier concluded, this statutory phrase merely reflects congressional recognition of supremacy clause jurisprudence. See, *e.g.*, *Mulhern*, 808 N.E.2d at 780-81 ("The TCPA was crafted to accommodate State interests, while respecting the structure, jurisdiction, and procedural rules of State courts."). Defendants further argue that the earlier discussed legislative history "is inconclusive and does not change the plain and ordinary meaning of the statutory language." However, as we earlier concluded, the legislative history demonstrates that Congress made a deliberate choice to confer jurisdiction immediately in state courts in order to facilitate enforcement of the act by individual consumers. See *Schulman*, 710 N.Y.S.2d at 371.

¶ 33    We observe that defendants cite to *The Chair King, Inc. v. GTE Mobilnet of Houston, Inc.*, 184 S.W.3d 707 (Tex. 2006), in support of the "opt in" approach. The Oklahoma Supreme Court has described the result of *Chair King* as follows:

> "In contrast to the reasoning of the overwhelming majority of jurisdictions, only one state has unequivocally espoused the 'opt in' theory. In [*Chair King*], the Texas Supreme Court held that the TCPA did not create an immediately enforceable private right of action for unsolicited faxes and that such a cause of action would not be recognized in Texas courts until the Legislature amended the state's business and commerce code to provide for such a suit by private parties. Such a provision was added \*\*\*. Therefore, *there are now no states who have considered the issue of enforcement under the TCPA which do not allow such actions in their respective courts.*" (Emphasis in original.) *MLC Mortgage*, 2009 OK 37, ¶ 15.

This result obtains for a good reason. Given supremacy clause principles, the plain language of 47 U.S.C. § 227(b)(3) and its legislative history, we doubt that Congress intended to require the states to adopt additional laws or court rules to enable TCPA claims to be heard

in state courts. See *Consumer Crusade*, 121 P.3d at 353. We agree with the decisions of those courts that have rejected the "opt in" interpretation of the "if otherwise permitted" clause of 47 U.S.C. § 227(b)(3). See *Mulhern*, 808 N.E.2d at 779.

¶ 34                            3. *"Opt Out" Approach*

¶ 35    The appellate court discussed a third interpretative approach to the statutory phrase "if otherwise permitted by the laws or rules of court of a State." The "opt out" approach construes the statutory language as creating an immediately enforceable private TCPA claim in state courts without the need for state enabling legislation. However, according to this theory, a state may "opt out" of the TCPA through legislation or court rule that specifically refuses to entertain private TCPA claims. 399 Ill. App. 3d at 1047-50; see *MLC Mortgage*, 2009 OK 37, ¶ 13; *Consumer Crusade*, 121 P.3d at 354; *Ponte*, 857 A.2d at 10.

¶ 36    In the present case, none of the parties argue that we adopt the "opt out" approach, or even point to any statute or court rule that purports to "opt out" of the TCPA. Therefore, we need not and do not discuss the merits of this interpretative approach. See, *e.g.*, *Mulhern*, 808 A.2d at 782.

¶ 37    For the foregoing reasons, we conclude that the TCPA "forms part of the law enforceable in Illinois courts" (*First Capital Mortgage*, 374 Ill. App. 3d at 741) without the need for the Illinois General Assembly to enact enabling legislation. 399 Ill. App. 3d at 1063.

¶ 38                      B. Assignability of Instant TCPA Claim

¶ 39    The second certified question asks essentially whether the TCPA claim in the present case is assignable under Illinois law and, if so, what is the appropriate statute of limitations. The appellate court held that the instant TCPA claim is assignable. The court rejected two contentions by defendants against assignability. First, the court concluded that the TCPA is a remedial and not a penal statute. 399 Ill. App. 3d at 1064-68. Second, the court concluded that corporations may bring TCPA claims to protect the property interests that the statute protects. 399 Ill. App. 3d at 1068-72.

¶ 40    Before this court, defendants assign error to these conclusions. For the following reasons, we hold that the appellate court's analysis led the court to discuss an issue that it need not have discussed, and to fail to answer a question that it should have answered.

¶ 41    In the instant third amended complaint, Italia does not merely rely on the same TCPA violations that Eclipse alleged in the original complaint. Italia does not allege that it acquired its TCPA claim through assignment from Eclipse or Hinman. Rather, the third amended complaint alleges a TCPA claim based on junk faxes that Italia itself received from defendants. Thus, the appellate court's discussion of assignability in the context of the third amended complaint does not affect the outcome of this litigation, but is only advisory. Generally, Illinois courts do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided. *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009); *Golden Rule Insurance Co. v. Schwartz*, 203 Ill. 2d 456, 469 (2003).

¶ 42    Accordingly, the appellate court need not and should not have discussed this issue. We vacate that portion of the appellate court's opinion (399 Ill. App. 3d at 1064-72) that discussed the issue of assignability. See, *e.g.*, *Golden Rule Insurance*, 203 Ill. 2d at 469; *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 157 (2002).

¶ 43                                    *Applicable Statute of Limitations*

¶ 44    As part of the second certified question, defendants also asked what was the applicable statute of limitations for the instant TCPA claim, the Illinois two-year limitations period for actions including personal injuries and statutory penalties (735 ILCS 5/13-202 (West 2002)) or the four-year limitations period for federal civil actions (28 U.S.C. § 1658 (2000)). The appellate court concluded that it need not answer this question. 399 Ill. App. 3d at 1072.

¶ 45    The appellate court should have answered this question. Italia filed the third amended complaint in January 2008. Italia alleged that defendants sent it 28 junk faxes from June 2005 through April 2007. Thus, application of either the federal four-year limitations period (28 U.S.C. § 1658) or the Illinois two-year limitations period (735 ILCS 5/13-202 (West 2002)) would render a different outcome for some of Italia's alleged TCPA violations. Accordingly, we remand the cause to the appellate court to answer this and any other remaining questions consistent with this opinion. See, *e.g.*, *Carter v. SSC Odin Operating Co.*, 237 Ill. 2d 30, 51 (2010); *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 503 (2009).

¶ 46                                    III. CONCLUSION

¶ 47    For the foregoing reasons, we answer the first certified question in the negative. Regarding the second certified question, we vacate the appellate court's discussion of assignability. The cause is remanded to the appellate court for further proceedings consistent with this opinion.

¶ 48    Certified question answered;

¶ 49    cause remanded.