No. 2-08-1148   Filed:  2-24-10 Modified4-5-10 Corrected4-27-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| ITALIA FOODS, INC., Indiv. and as the Representative of a Class of Similarly Situated Persons, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 03--CH--924 |
| | ) | |
| SUN TOURS, INC., d/b/a Hobbit Travel, and PAUL GROSSO, | ) ) | Honorable Mitchell L. Hoffman, |
| Defendants-Appellants. | ) ) | Judge, Presiding. |

Modified Upon Denial of Rehearing

JUSTICE JORGENSEN delivered the opinion of the court:

I. INTRODUCTION

In this interlocutory appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308), we are asked to answer three certified questions:

"(1) Does the language and purpose of the federal Telephone Consumer Protection Act [(TCPA) (47 U.S.C. §227 (2000))[1]] require that the Illinois General Assembly enact enabling legislation before private TCPA claims can be brought and enforced in Illinois state courts?

_____

[1]In 2005, the TCPA was amended and renamed the Junk Fax Prevention Act of 2005.  47 U.S.C. §227 (Supp. 2005).

(2) Are the TCPA claims alleged in this case 'statutory penalties' under Illinois law? And if so:

(a) Are those claims assignable under Illinois law?

(b) Does Illinois' two[-]year statutory penalty limitations period [(735 ILCS 5/13--202 (West 2002))] apply to such claims, as opposed to [the federal four-year limitations period for civil actions (28 U.S.C. §1658 (2000))]?

(3) If the claim is not assignable, then should absent class members' putative claims against defendants be treated as tolled when no class representative with proper standing represented the putative class for a 27-month period?"

We answer the first certified question in the negative. Specifically, the Illinois General Assembly need not enact enabling legislation before private TCPA claims can be brought and enforced in Illinois state courts. As to the second certified question, we modify the first two parts of the question and conclude that TCPA claims are remedial and assignable and, alternatively, that (whether or not they are remedial) they are assignable because they do not constitute personal-injury actions. Further, we conclude that we need not answer subsection (b) of the second certified question (concerning the appropriate statute of limitations). Finally, because we conclude that the TCPA claims are assignable, we do not address the third certified question.

## II. BACKGROUND

On June 13, 2003, in a class action complaint, Eclipse Manufacturing Company, an Illinois corporation, sued Sun Tours, d/b/a Hobbit Travel, a travel agency, alleging that, in July and August 2002, Hobbit Travel sent Eclipse four unsolicited one-page faxes advertising discounted travel offers. Eclipse further alleged that Hobbit Travel's actions violated the TCPA and the Consumer

Fraud and Deceptive Business Practices Act (Fraud Act) (815 ILCS 505/1 et seq. (West 2002)) and constituted common-law conversion. As to the TCPA claim, Eclipse sought statutory and punitive damages, an injunction, and attorney fees. Eclipse subsequently amended its complaint, adding Hobbit Travel's president, Paul Grosso, as a defendant.

On April 5, 2007, Hobbit Travel moved to dismiss Eclipse's amended complaint, arguing, inter alia, that the TCPA claim was not cognizable in Illinois because the operative language of the TCPA--namely, that state court TCPA actions must be "otherwise permitted by the laws or rules of court of a State" (47 U.S.C. §227(b)(3) (2000))--required the Illinois General Assembly to affirmatively opt in to the TCPA's enforcement scheme, which it had not done.[2] On July 26, 2007, the trial court denied Hobbit Travel's motion as to the TCPA claim, finding that TCPA claims may be brought in Illinois courts.

On August 30, 2007, Robert Hinman, Eclipse's president and owner, was substituted in for Eclipse as plaintiff by filing a second amended complaint. Hinman alleged that the same four faxes were transmitted to him and not to Eclipse. He further alleged that, on November 30, 2005, several years after receiving Hobbit Travel's faxes, he sold Eclipse's stock to a third party, but expressly retained the right to pursue this TCPA action by virtue of an assignment of that claim (from Eclipse to Hinman).

On October 1, 2007, defendants moved to dismiss the second amended complaint. They challenged Eclipse's assignment of its TCPA claim to Hinman, arguing that the claim was not assignable because it constituted a statutory penalty. Defendants argued that the TCPA's fixed award

---

[2]Illinois's junk fax statute, effective as of January 1, 1990, designates violations thereof as petty offenses that are subject to a $500 maximum fine. 720 ILCS 5/26--3 (West 2008).

of $500 per violation (47 U.S.C. §227(b)(3)(B) (2000)) made the claim a statutory penalty under the test this court set forth in McDonald's Corp. v. Levine, 108 Ill. App. 3d 732, 738 (1982). Defendants thus asserted that Eclipse's assignment of the TCPA claim to Hinman was invalid because the majority rule provides that claims under penal statutes are not assignable. They also argued that Hinman's claims were time-barred because they were brought over five years after each of the four faxes was allegedly received (in July and August 2002).

On January 31, 2008, Italia Foods, Inc., sought leave to substitute in for Hinman and file a third amended complaint, asserting that it had received over 25 faxes from defendants. Over Hobbit Travel's objection, the trial court granted Italia Foods' motion and subsequently allowed Hobbit Travel to file a motion to dismiss the third amended complaint, incorporating its arguments concerning Hinman's invalid assignment from Eclipse.

In the third amended complaint, dated February 28, 2008, Italia Foods alleged that Hobbit Travel sent it 28 unsolicited one-page faxes from June 24, 2005, through April 17, 2007, advertising discount travel deals. Italia Foods further alleged that Hobbit Travel's actions violated the TCPA and Fraud Act and constituted common-law conversion. As to the TCPA claim, Italia Foods sought $500 in statutory damages for each violation, an injunction, and costs.

Hobbit Travel moved to dismiss (735 ILCS 5/2--615, 2--619 (West 2002)) portions of Italia Foods' complaint, arguing that: (1) TCPA claims are not cognizable in Illinois courts for the reasons set forth in Chair King, Inc. v. GTE Mobilnet of Houston, Inc., 184 S.W.3d 707 (Tex. 2006) (hereinafter Chair King); (2) the limitations period for TCPA claims should be measured from the filing of Italia Foods' third amended complaint on February 28, 2008, and not from Eclipse's original complaint (filed June 13, 2003); (3) the applicable limitations period for TCPA claims is two years

(735 ILCS 5/13--202 (West 2002)), as opposed to four years (28 U.S.C. §1658 (2000)) as argued by Italia Foods; and (4) the limitations period was not tolled during the 27-month period from November 30, 2005 (when Eclipse lost standing to bring its claims), to February 28, 2008 (when Italia Foods filed its complaint), as neither Eclipse nor Hinman had standing during this time.

In response, Italia Foods invoked the class tolling rule announced in American Pipe & Construction Co. v. State, 414 U.S. 538, 38 L. Ed. 2d 713, 94 S. Ct. 756 (1974), arguing that it preserved the otherwise stale claims of putative class members back to June 13, 1999, four years before Eclipse's original complaint. Hobbit Travel replied that the putative class's claims could not be tolled under American Pipe due to the time that lapsed before Italia Foods replaced Hinman as the named plaintiff. According to Hobbit Travel, Eclipse could not have validly assigned its TCPA claim to Hinman under Illinois law, because such a claim constituted a statutory penalty; therefore, a 27-month gap (November 30, 2005, when Eclipse purported to assign its claims to Hinman, to February 28, 2008, when Italia Foods replaced Hinman as the named plaintiff) existed during which no named plaintiff with proper standing represented the putative class.

On August 26, 2008, the trial court denied Hobbit Travel's motion to dismiss Italia Foods' TCPA claim. The court rejected Hobbit Travel's Chair King argument that TCPA claims are not cognizable in Illinois state courts. It further found that Eclipse's TCPA claim was assignable to Hinman under Kleinwort Benson North America, Inc. v. Quantum Financial Services, Inc., 181 Ill. 2d 214 (1998), which had allowed a company to assign a punitive damages claim to its shareholders. The court further found that the TCPA is not a penal statute and that TCPA claims are subject to the federal four-year statute of limitations (28 U.S.C. §1658 (2000)). Finally, the court found that the American Pipe tolling doctrine applied and that the class's claims related back to June 13, 1999.

On November 20, 2008, the court granted Hobbit Travel's motion to make Rule 308 findings, and, on December 2, 2008, it entered an order certifying three questions. Hobbit Travel petitioned for leave to appeal to this court, and, on February 25, 2009, we allowed the appeal as to the three certified questions.[3]

### III. ANALYSIS

### A. Jurisdiction of Illinois Courts Over TCPA Claims

The first certified question asks: "Does the language and purpose of the federal [TCPA] require that the Illinois General Assembly enact enabling legislation before private TCPA claims can be brought and enforced in Illinois state courts?" Defendants urge us to answer "yes" to this question and order that Italia Foods' TCPA claim be dismissed with prejudice because it is undisputed that the General Assembly never passed legislation authorizing TCPA suits in this state. Before addressing the parties' specific arguments, we first provide an overview of some constitutional considerations and the statute.

### 1. Supremacy Clause

The supremacy clause provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof *** shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2.

"Federal law is enforceable in state courts not because Congress has determined that federal courts would otherwise be burdened or that state courts might provide a more

---

[3]Following several requests by the parties for extensions of time to file their briefs on appeal, this case was ready for this court's review in September 2009.

convenient forum--although both might well be true--but because the Constitution and laws passed pursuant to it are as much laws in the States as laws passed by the state legislature. The Supremacy Clause makes those laws 'the supreme Law of the Land,' and charges state courts with a coordinate responsibility to enforce that law according to their regular modes of procedure." Howlett v. Rose, 496 U.S. 356, 367, 110 L. Ed. 2d 332, 347, 110 S. Ct. 2430, 2438 (1990).

There is a presumption, therefore, that federal causes of action are enforceable in state courts. See Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 478, 69 L. Ed. 2d 784, 791, 101 S. Ct. 2870, 2875 (1981) ("In considering the propriety of state-court jurisdiction over any particular federal claim, the Court begins with the presumption that state courts enjoy concurrent jurisdiction"); see also

R.A. Ponte Architects, Ltd. v. Investors' Alert, Inc., 382 Md. 689, 715, 857 A.2d 1, 16 (2004) ("Typically, when Congress creates a civil cause of action, it authorizes federal trial courts to entertain the cause of action. It sometimes expressly grants concurrent jurisdiction to state trial courts. When Congress is silent concerning state court jurisdiction over federal causes of action, there is a 'deeply rooted presumption in favor of concurrent state court jurisdiction,' Tafflin v. Levitt, 493 U.S. 455, 459, 110 S. Ct. 792, 795, 107 L. Ed. 2d 887, 894 (1990)").

Only in limited cases may a state discriminate against federal causes of action, because, where it does so, the state's law generally violates the supremacy clause. R.A. Ponte Architects, 382 Md. at 715, 857 A.2d at 16. "Congress, however, may confine jurisdiction to the federal courts either explicitly or implicitly. Thus, the presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear

incompatibility between state-court jurisdiction and federal interests." Gulf Offshore, 453 U.S. at 478, 69 L. Ed. 2d at 791, 101 S. Ct. at 2875; cf. Haywood v. Drown, 596 U.S. ___, ___, 173 L. Ed. 2d 920, 928, 129 S. Ct. 2108, 2114 (2009) (presumption of concurrent jurisdiction is defeated in only two narrow circumstances: when Congress expressly ousts state courts of jurisdiction and when a state court refuses jurisdiction on the basis of a neutral state rule of court administration). Generally, a state may apply to the federal cause of action a neutral rule of court administration, unless that rule is preempted by federal law. Howlett, 496 U.S. at 372, 110 L. Ed. 2d at 351, 110 S. Ct. at 2440-41; see also Haywood, 586 U.S. at ___, 173 L. Ed. 2d at 928, 129 S. Ct. at 2114, quoting Tafflin, 493 U.S. at 458, 107 L. Ed. 2d at 894, 110 S. Ct. at 795 ("[O]nly a neutral jurisdictional rule will be deemed a 'valid excuse' for departing from the default assumption that 'state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States' ").

### 2. TCPA

The TCPA was enacted in 1991 (Pub. L. No. 102--243, 105 Stat. 2394 (1991)) and it amended Title II of the Communications Act of 1934 (47 U.S.C. §201 et seq. (1994)), principally by adding a new section (47 U.S.C. §227 (1994)). The statute places restrictions on unsolicited, automated telephone calls to the home and restricts certain uses of facsimile machines and automatic dialers. 47 U.S.C. §227(b)(1) (2000). The TCPA "seeks to address the increased use of automated telephone equipment to make telephone calls in bulk and fax unsolicited advertisements that cross state lines and fall outside the regulatory jurisdiction of individual states." Portuguese American Leadership Council of the United States, Inc. v. Investors' Alert, Inc., 956 A.2d 671, 674 (D.C. 2008).

The statute contains some "unusual" features. Chair King, Inc. v. Houston Cellular Corp., 131 F.3d 507, 512 (5th Cir. 1997) (hereinafter Houston Cellular). The TCPA "creates a federal private right of action, but *** confers exclusive jurisdiction on state courts to entertain it." Chair King, 184 S.W.3d at 710. The statute also contains a federal enforcement component that authorizes state attorneys general to bring civil actions in federal court on behalf of their state residents to obtain injunctive relief against unauthorized telephone calls and facsimiles and to recover monetary damages. 47 U.S.C. §227(f)(1) (2000). The TCPA provides that the federal district courts have "exclusive jurisdiction" over actions brought by state attorneys general. 47 U.S.C. §227(f)(2) (2000). The statute also authorizes the Federal Communications Commission (FCC) to intervene as of right in any state attorney general's action. 47 U.S.C. §227(f)(3) (2000).[4]

---

[4]The majority of federal courts that have considered the issue have held that, although federal courts have exclusive jurisdiction over TCPA enforcement actions brought by state attorneys general and the FCC, federal courts have no jurisdiction to hear private rights of action under the TCPA. Specifically, six courts of appeal have held that federal courts lack federal question subject matter jurisdiction to hear TCPA cases. See Murphey v. Lanier, 204 F.3d 911, 913-15 (9th Cir. 2000); Foxhall Realty Law Offices, Inc. v. Telecommunications Premium Services, Ltd., 156 F.3d 432, 438 (2d Cir. 1998); ErieNet, Inc. v. Velocity Net, Inc., 156 F.3d 513, 520 (3d Cir. 1998); Nicholson v. Hooters of Augusta, Inc., 136 F.3d 1287, 1289, modified, 140 F.3d 898 (11th Cir. 1998); International Science & Technology Institute, Inc. v. Inacom Communications, Inc., 106 F.3d 1146, 1152 (4th Cir. 1997); Houston Cellular, 131 F.3d at 513. However, one court of appeal has held that federal question jurisdiction is properly invoked in private TCPA claims. See Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 450-51 (7th Cir. 2005). Further, three courts of appeal have held

As relevant here, the TCPA prohibits the "use [of] any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. §227(b)(1)(C) (2000). The statute's first private right of action,[5] which targets the misuse of fax machines, prerecorded message technology, or automatic dialing machines, is contained in section 227(b)(3):

> "A person or entity may, <u>if otherwise permitted by the laws or rules of court of a State</u>, bring in an appropriate court of that State--
>
>> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>>
>> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>>
>> (C) both such actions.
>
> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." (Emphasis added.) 47 U.S.C. §227(b)(3) (2000).

---

that federal courts may hear TCPA claims when subject matter jurisdiction is based on diversity. See <u>US Fax Law Center, Inc. v. iHire, Inc.</u>, 476 F.3d 1112, 1118 (10th Cir. 2007); <u>Gottlieb v. Carnival Corp.</u>, 436 F.3d 335, 341 (2d Cir. 2006); <u>Brill</u>, 427 F.3d at 450-51.

[5]The second private cause of action in the TCPA targets violations of the FCC's do-not-call rules and, as in the first cause of action, applies "if otherwise permitted by the laws or rules of court of a State." 47 U.S.C. §227(c)(5) (2000).

The first certified question concerns the congressional intent underlying the foregoing emphasized language and its relationship with state law. The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature. King v. First Capital Financial Services Corp., 215 Ill. 2d 1, 26 (2005). The best indicator of the legislature's intent is the language in the statute, which must be accorded its plain and ordinary meaning. King, 215 Ill. 2d at 26. In addition to the statutory language, courts may consider the purpose behind the law and the evils sought to be remedied, as well as the consequences that would result from construing the law one way or the other. Williams v. Staples, 208 Ill. 2d 480, 487 (2004). Where a statute is capable of more than one reasonable interpretation, the statute will be deemed ambiguous. General Motors Corp. v. State of Illinois Motor Vehicle Review Board, 224 Ill. 2d 1, 13 (2007). In such cases, courts may consider extrinsic aids to construction, such as legislative history. County of Du Page v. Illinois Labor Relations Board, 231 Ill. 2d 593, 604 (2008). Questions of statutory interpretation are subject to de novo review. Harrisonville Telephone Co. v. Illinois Commerce Comm'n, 212 Ill. 2d 237, 247 (2004).

We conclude that the phrase "if otherwise permitted by the laws or rules of court of a State" is ambiguous, as it is unclear what, if any, state action is required before private actions may commence in state courts. Indeed, three general interpretations of the TCPA's "if otherwise permitted" language have emerged: (1) the "opt-out" approach; (2) the "acknowledgment" approach; and (3) the "opt-in" approach. Accounting Outsourcing, LLC v. Verizon Wireless Personal Communications, L.P., 329 F. Supp. 2d 789, 795 (M.D. La. 2004). We conclude below that the "acknowledgment" approach is the correct framework to analyze the TCPA's private right of action.

### a. "Opt-out" Approach

The "opt-out" approach interprets the TCPA's "if otherwise permitted" language to authorize private TCPA suits in state courts without affirmative state action. MLC Mortgage Corp. v. Sun America Mortgage Co., 2009 OK 37, ¶13, 212 P. 3d 1199, 1205. However, the theory allows states to legislatively decline to address such suits. Chair King, 184 S.W.3d at 714. The courts adopting the "opt-out" approach generally base their reasoning on language in the Fourth Circuit's decision in International Science.

The International Science court addressed three issues. First, it was presented with the question whether the permissive language of the TCPA's private-action provision at issue here--that a private action "may" be brought in state courts--does not make state court jurisdiction exclusive. The Fourth Circuit held that Congress did not intend to grant jurisdiction over private actions to federal courts, where it mentioned only state courts in the provision. International Science, 106 F.3d at 1152. The court relied on the fact that federal courts require specific grants of jurisdiction; that the statute specifically provides that private actions may be brought in state courts and that actions by the states must be brought in federal courts; that Congress explicitly provided for concurrent jurisdiction in other sections of the Communications Act; and that the TCPA's legislative history's reference to small-claims courts supports a conclusion that the claims are best resolved in state courts. International Science, 106 F.3d at 1151-53. The second issue the court addressed involved whether the general federal-question jurisdictional statute[6] (28 U.S.C. §1331 (1990)) confers on

---

[6]The federal-question statute provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §1331 (2006).

federal courts jurisdiction over private actions. The court held that it does not, because the "particularized congressional intent manifested in 47 U.S.C. §227(b)(3) governs, not the general proposition announced in §1331." International Science, 106 F.3d at 1155. Third, the International Science court addressed whether finding exclusive state jurisdiction raised constitutional questions, specifically: (1) whether it would result in a violation of the equal protection clause; and (2) whether it would infringe on the states' tenth amendment rights to govern without interference from the federal government. As to equal protection, the court stated,[7] in response to an argument that the "if otherwise permitted" proviso violates equal protection because it allows a private cause of action only where a state has no statutory prohibition against unsolicited fax transmissions and, therefore, citizens of states that have no prohibition would not have the benefit of the federal statute:

> "The clause in 47 U.S.C. §227(b)(3) 'if otherwise permitted by the laws or rules of court of a State' does not condition the substantive right to be free from unsolicited faxes on state approval. Indeed, that substantive right is enforceable by state attorneys general or the [FCC] irrespective of the availability of a private [right of] action in state court. Rather, the clause recognizes that states may refuse to exercise jurisdiction authorized by the statute." (Emphases added.) International Science, 106 F.3d at 1156.

The court noted that, to the extent the existence of a private right of action varied between the states, state and federal governments could still enforce the same substantive rights in federal court, and this inequality was rationally related to a legitimate governmental interest:

---

[7]Several courts refer to this portion of the International Science decision as "dicta." See, e.g., Accounting Outsourcing, 329 F. Supp. 2d at 800.

"[C]ongress understandably avoided opening federal courts to the millions of potential private TCPA claims by authorizing private actions only in state courts, presumably in the small claims courts. Similarly concerned over the potential impact of private actions on the administration of state courts, Congress included a provision to allow the states to prohibit private TCPA actions in their courts. *** With those interests in mind and recognizing that other enforcement mechanisms are available in the TCPA, we believe Congress acted rationally in *** allowing states to close [their courts] to the millions of private actions that could be filed if only a small portion of each year's 6.57 billion telemarketing transmissions were illegal under the TCPA." International Science, 106 F.3d at 1157.

Addressing the tenth amendment,[8] the court held that Congress did not overstep the amendment when it enacted the TCPA, because it explicitly recognized the "states' power to reject enforcement in their courts of the federally created right." International Science, 106 F.3d at 1157. The court acknowledged that, in Testa v. Katt, 330 U.S. 386, 394, 91 L. Ed. 967, 972, 67 S. Ct. 810, 814-15 (1947), the Supreme Court held that the supremacy clause precludes state courts from refusing to enforce federal claims. However, the court also noted that Testa's holding was limited to federal enactments that provide for concurrent state and federal jurisdiction, which is not the case with the TCPA, which provides for exclusive state jurisdiction. International Science, 106 F.3d at 1157-58. For this reason, the court declined to extend Testa to the TCPA, noting that adopting an "opt-out" approach would avoid the constitutional issue left undecided by Testa--whether the TCPA

---

[8]The tenth amendment provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const., amend. X.

violates the tenth amendment by coercing states to enforce federal law: "Congress enacted the TCPA to assist states where they lacked jurisdiction; it empowered states themselves to enforce the TCPA in federal court; it authorized private enforcement exclusively in state courts; and it recognized state power to reject Congress' authorization." International Science, 106 F.3d at 1158.

By this court's count, seven states' courts appear to have concluded that the "opt-out" approach is the correct framework. See Edwards v. Direct Access, LLC, 121 Nev. 929, 932, 124 P.3d 1158, 1160 (2005) (adopting "opt-out" approach on the basis of supremacy-clause considerations); Lary v. Flasch Business Consulting, 878 So. 2d 1158, 1164 (Ala. Civ. App. 2003) (considering only "opt-out" and "opt-in" approaches and adopting "opt-out" approach on the basis of supremacy-clause principles); Kaufman v. ACS Systems, Inc., 110 Cal. App. 4th 886, 895, 2 Cal. Rptr. 3d 296, 304 (2003) (relying on International Science, noting that the "opt-in" approach has been criticized and is the minority view, and noting that California had not prohibited TCPA actions in state court); Reynolds v. Diamond Foods & Poultry, Inc., 79 S.W.3d 907, 910 (Mo. 2002) (following International Science and rejecting "opt-in" approach); Zelma v. Market U.S.A., 343 N.J. Super. 356, 366, 778 A.2d 591, 598 (App. Div. 2001) (following International Science and rejecting "opt-in" arguments); Hooters of Augusta, Inc. v. Nicholson, 245 Ga. App. 363, 365-66, 537 S.E.2d 468, 470-71 (2000) (finding no clear authority, construing TCPA to provide a remedy for Georgia citizens, finding International Science persuasive, and determining that Georgia law did not expressly prohibit private TCPA actions); Kaplan v. Democrat & Chronicle, 266 A.D.2d 848, 849, 698 N.Y.S.2d 799, 800-01 (App. Div. 1999) (citing International Science and noting the absence of any state statute declining to exercise jurisdiction over TCPA claims).

One court has commented that the <u>International Science</u> court "neglected to realize that allowing states to 'opt-out' could create a different constitutional issue, namely[,] whether Congress can give a state authority to arbitrarily close its courts to a federal remedy. It is this constitutional consideration which forms the basis of the 'acknowledgment' approach." <u>Accounting Outsourcing</u>, 329 F. Supp. 2d at 798.

b. "Acknowledgment" Approach

The "acknowledgment" approach requires "no enabling legislation for parties to assert private TCPA claims." <u>MLC Mortgage Corp.</u>, 2009 OK 37, ¶12, 212 P.3d 1199, 1204. Courts adopting this approach, of which there are seven, interpret the TCPA's "if otherwise permitted" clause as merely acknowledging "the principle that states have the right to structure their own court systems and that state courts are not obligated to change their procedural rules to accommodate TCPA claims." <u>Schulman v. Chase Manhattan Bank</u>, 268 A.D.2d 174, 179, 710 N.Y.S.2d 368, 372 (App. Div. 2000) (adopting "acknowledgment" approach and rejecting "opt-in" approach on the bases of supremacy-clause considerations, the statute's framework, and its legislative history);[9] see also <u>MLC Mortgage Corp.</u>, 2009 OK 37, ¶¶12, 19, 212 P.3d 1199, 1201, 1207 (adopting "acknowledgment" approach on the bases that the legislature previously recognized that an analogous state-law claim may be criminally prosecuted and that the Oklahoma Constitution guarantees Oklahoma citizens open access to the judicial system and allocates "unlimited original jurisdiction of all justiciable matters not otherwise restricted to the district courts"); <u>Portuguese American Leadership Council of the United</u>

---

[9]New York's intermediate courts appear to be split on whether the "opt-out" or "acknowledgment" approach is the correct analytical framework. Compare <u>Kaplan</u>, 266 A.D.2d at 849, 698 N.Y.S.2d at 800-01, with <u>Schulman</u>, 268 A.D.2d at 179, 710 N.Y.S.2d at 372.

States, 956 A.2d at 677-80 & n.8 (noting default rule that federal laws are enforceable in state courts unless there is an explicit statutory directive and adopting "acknowledgment" approach by relying on statute's language, which the court read to refer to neutral laws and rules governing each state's court system, in addition to the statute's purpose, legislative history, and FCC interpretation; also concluding that it need not decide whether District of Columbia is free to "opt out"); Consumer Crusade, Inc. v. Affordable Health Care Solutions, Inc., 121 P.3d 350, 354-55 (Colo. App. 2005) (relying on statute's legislative history and language and interpreting the "acknowledgment" approach as avoiding the constitutional problems of the "opt-in" and "opt-out" approaches); R.A. Ponte Architects, 382 Md. at 706-07, 857 A.2d at 11 (relying on statute's language, legislative history, and supremacy-clause considerations, and other states' decisions); Mulhern v. MacLeod, 411 Mass. 754, 755-59, 808 N.E.2d 778, 779-81 (2004) (rejecting "opt-in" approach; adopting "acknowledgment" approach on the bases of supremacy-clause principles, statute's language and legislative history, and other courts' decisions; declining to address whether states may "opt-out"); Condon v. Office Depot, Inc., 855 So. 2d 644, 647-48 (Fla. App. 2003) (rejecting "opt-in" approach; adopting "acknowledgment" approach on the bases of supremacy clause, statute's language, and legislative history).

"Under [the 'acknowledgment'] view, no state can refuse to entertain a private TCPA action, but a state is not compelled to adopt special procedural rules for such actions." MLC Mortgage Corp., 2009 OK 37, ¶12, 212 P.3d 1199, 1204. Advocates of this interpretation base their opinions on the supremacy clause and the TCPA's legislative history. Accounting Outsourcing, 329 F. Supp. 2d at 798. As to the supremacy clause, they conclude that permitting states to "opt-in" or "opt-out" would violate the supremacy clause's language making federal law the supreme law of the land and

charging states courts with a coordinate responsibility to enforce federal law pursuant to their regular modes of procedure. Schulman, 268 A.D.2d at 177-78, 710 N.Y.S.2d at 371. "[F]ederal law must take state courts 'as it finds them,' because the states 'have great latitude to establish the structure and jurisdiction of their own courts.' [Howlett, 496 U.S. at 372, 110 L. Ed. 2d at 351, 110 S. Ct. at 2441]. Thus, a state may decline to exercise jurisdiction over a federal claim by applying a neutral rule of judicial administration. [Citation.]" Consumer Crusade, 121 P.3d at 353.

As to the TCPA's legislative history, proponents of the "acknowledgment" theory point to South Carolina Senator Ernest Hollings' comments to Congress before the bill's passage, concerning the private right of action:

" 'The substitute bill contains a private right-of-action provision that will make it easier for consumers to recover damages from receiving these computerized calls. The provision would allow consumers to bring an action in State court against any entity that violates the bill. The bill does not, because of constitutional constraints, dictate to the States which court in each State shall be the proper venue for such an action, as this is a matter for State legislators to determine. Nevertheless, it is my hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court. The consumer outrage at receiving these calls is clear. Unless Congress makes it easier for consumers to obtain damages from those who violate this bill, these abuses will undoubtedly continue.

Small claims court or a similar court would allow the consumer to appear before the court without an attorney. The amount of damages in this legislation is set to be fair to both the consumer and the telemarketer. However, it would defeat the purposes of the bill if the attorneys' costs to consumers of bringing an action were greater than the potential damages.

I thus expect that the States will act reasonably in permitting their citizens to go to court to enforce this bill.' " R.A. Ponte Architects, 382 Md. at 710-11, 857 A.2d at 13-14, quoting 137 Cong. Rec. 30821-22 (1991) (statement of Senator Hollings).

Advocates of the theory "argue that the 'if otherwise permitted' language means that states are permitted to determine which of their courts will hear TCPA claims, not whether their state will be open to such claims." (Emphasis in original.) Accounting Outsourcing, 329 F. Supp. 2d at 799. Some courts also read an expression of congressional intent in the statute's framework, wherein the states are given exclusive jurisdiction over private suits and federal courts are limited to civil actions brought by state attorneys general or the FCC. Schulman, 268 A.D.2d at 178, 710 N.Y.S.2d at 371.

### c. "Opt-in" Approach

The "opt-in" approach, which defendants urge us to adopt, concludes that Congress intended to deprive state courts of jurisdiction over private TCPA claims. It interprets the statute's "if otherwise permitted" language as indicating that the TCPA does not create an immediately enforceable right. Under this approach, actions may be maintained in state courts only upon a legislative action or court rule "opting-in" to exercise jurisdiction over such actions. MLC Mortgage Corp., 2009 OK 37, ¶13, 212 P.3d 1199, 1205. Only one state--Texas--has adopted the "opt-in" theory.

In Chair King, the Texas Supreme Court held that unsolicited faxes sent before the enactment of a state statute permitting a private right of action for TCPA violations were not actionable under the TCPA in Texas state courts. Chair King, 184 S.W.3d at 708. The court held that the TCPA's plain, unambiguous language, its purpose, and its historical context warranted adoption of the "opt-in" approach. Chair King, 184 S.W.3d at 711.

The court reviewed the three general approaches to interpreting the statutory language. The court rejected the "acknowledgment" approach, finding no support for it in the statutory language or the legislative history. As to the statutory language, the court noted that the "acknowledgment" approach risks violating the supremacy clause because it fails to give effect to all of the language in the statute:

"Had the TCPA simply provided that '[a] person or entity may ... bring ... an action based on a [TCPA] violation,' the states' constitutional obligation under the Supremacy Clause to entertain such claims would be irrefutable. But Congress chose to qualify the private TCPA right of action it created by including the proviso 'if otherwise permitted by the laws or rules of court of a State.' [Citation.] Failure to give effect to the statutory proviso would itself run the risk of violating the Supremacy Clause by refusing to apply the federal right as written." Chair King, 184 S.W.3d at 712.

The court also found the "if otherwise permitted" language "doubly redundant" under the "acknowledgment" approach. Chair King, 184 S.W.3d at 713. It explained that:

"State district courts of general jurisdiction are presumed to have adjudicative power over federal statutory private damage claims unless Congress specifically decides otherwise, so there would be no reason for Congress to import that general principle into the statutory proviso when it does not do so in other federal statutes. [Citation.] Nevertheless, Congress did choose to acknowledge this general principle elsewhere in the TCPA by stating that suit may be brought 'in an appropriate court of that State.' 47 U.S.C. §227(b)(3). Interpreting the 'if otherwise permitted' provision to have the same meaning 'would be redundant and risk

rendering the words meaningless.' [Houston Cellular], 135 S.W.3d at 382." Chair King, 184 S.W.3d at 713.

As to the provision's reference to rules of court ("if otherwise permitted by the laws or rules of court of a State" (emphasis added) (47 U.S.C. §227(b)(3) (2000)), the court dismissed the "acknowledgment" approach proponents' arguments that the phrase evidenced Congress's acknowledgment of states' rights to independently administer their court systems and evidenced a lack of intent to require affirmative state legislative action before a party could bring a private TCPA claim in state court, noting that such a reading would render as surplusage the " 'if otherwise permitted by the laws *** of a State' " language. Chair King, 184 S.W.3d at 713, quoting 117 U.S.C. §227(b)(3) (2000).

Reviewing Senator Hollings' comments when he introduced the substitute bill containing the private right of action, the court concluded that the speech does not compel adoption of the "acknowledgment" theory. In its assessment of the legislative history, the court first noted that there could be no certainty that the senator's understanding of the private right of action reflected the entire Congress's view. Next, it noted that, even if Senator Hollings' remarks accurately captured the congressional intent, his comments could also support the "opt-in" approach:

"By stating his expectation that 'the States will act reasonably in permitting their citizens to go to court to enforce this bill,' Senator Hollings implies that states must act in an affirmative manner before the TCPA private damage claim is cognizable in state court. In sum, we believe that Senator Hollings's remarks are of limited interpretive value." Chair King, 184 S.W.3d at 713.

Turning to the "opt-out" approach, the Texas Supreme Court dismissed proponents' arguments that the approach sufficiently considered supremacy-clause and inefficiency issues. The court dismissed supremacy-clause concerns by noting that "giving effect to the ['if otherwise'] proviso that Congress created cannot run afoul of the supremacy clause. Having concluded that Congress intended the statutory proviso to have some conditional effect, be it 'opt-out' or 'opt-in,' we fail to see how supremacy clause concerns are implicated at all." Chair King, 184 S.W.3d at 715. The court found it significant that Congress made the private right of action available exclusively through state courts, noting that it was likely due to the millions of telemarketing calls made daily and because the locus of regulation was centered in the states. The court then found it reasonable to presume that Congress recognized the burden on state courts that these claims could present and further that Congress would, in consideration of the potential burden on state court resources of a flood of TCPA litigation, choose to allow states to have a voice in the matter. Chair King, 184 S.W.3d at 715-16. Finally, noting that more than half the states had statutes restricting telemarketing when the TCPA was enacted, the court concluded that the TCPA's "remedies were meant to enhance the states' existing attempts to regulate unsolicited calls and faxes. *** There is strong evidence that Congress wanted to assist state regulation in reaching interstate communications if a state so desired, not to create an independent regulatory framework for a potential flood of individual state-court lawsuits." Chair King, 184 S.W.3d at 716.

Having rejected the "acknowledgment" and "opt-out" approaches, the Chair King court turned to the "opt-in" interpretation. Relying on the dictionary definitions of "otherwise" and "permit," its reading of congressional intent, and its interpretation of the TCPA's preemption language, the court adopted the "opt-in" approach. The court used the dictionary definitions to

conclude that the words "otherwise permitted" suggested "the necessity of affirmative state action to activate the TCPA's private cause of action." Chair King, 184 S.W.3d at 716. The court next concluded that the congressional intent supported its "opt-in" reading of the statutory proviso, where the TCPA was intended to supplement state regulation and where Congress was likely aware that state courts could become inundated with suits. Chair King, 184 S.W.3d at 716-17 (proviso "indicates deliberate deference to an area of uniquely state concern"). Agreeing that the statute's most important purpose is to swiftly eliminate unsolicited facsimile advertising, the court noted, "[b]ut we believe Congress hinged the swiftness of the federal legislation on the willingness of states to bear the burden and cost of overseeing these claims." Chair King, 184 S.W.3d at 717. Finally, the court rejected an argument that the TCPA's preemption language would be rendered meaningless by an "opt-in" interpretation, stating that the statute's language does not preempt state laws imposing more restrictive requirements or even prohibiting the use of telemarketing equipment (47 U.S.C. §227(e) (2000)), and concluding:

> "Congress's intent to supplement state legislation explains why the preemption concern would have focused on more aggressive regulation by the states. [Citation.] Congress clearly did not intend the TCPA to establish a ceiling if states decided to be more aggressive in their approach, but it does not necessarily follow that Congress intended the TCPA to be a mandatory floor for private enforcement whether or not a state chose to allow it." Chair King, 184 S.W.3d at 718.

The court cited case law discussing federal preemption in fields traditionally occupied by the states and noted that there is an assumption that the states' historic police powers are not to be superseded by federal statutes unless that is Congress's clear purpose. Chair King, 184 S.W.3d at 718.

## 3. Parties' Arguments and Analysis of the Emerging Approaches

In light of the foregoing background, we turn to the parties' arguments in this case. Defendants urge us to follow Chair King, arguing that it is the most well reasoned and persuasive of the various interpretations of the TCPA's "if otherwise permitted" language. Defendants contend that First Capital Mortgage Corp. v. Union Federal Bank of Indianapolis, 374 Ill. App. 3d 739 (2007), upon which Italia Foods relies, does not control because it did not directly address the question here, as the parties in that case agreed that the "acknowledgment" approach should apply to the court's analysis and because the court did not address Chair King and the "opt-in" approach. Accordingly, defendants urge us to answer "yes" to the first certified question.

Italia Foods counters that Chair King is poorly reasoned and inconsistent with jurisprudence concerning state-court jurisdiction over federal statutory claims. State courts of general jurisdiction are presumed to have jurisdiction over federal statutory claims, and the presumption can be overcome only by explicit statutory language, legislative history, or clear incompatibility between state-court jurisdiction and federal interests. In Italia Foods' view, the TCPA's "if otherwise permitted" language does not amount to an explicit statutory directive and is, at most, ambiguous. It reasons that any doubts concerning the meaning of the phrase should be resolved by holding that no specific enabling legislation is required. Italia Foods next argues that Chair King's construction of the statutory language violates the tenth amendment and the Illinois Constitution because it amounts to an attempt by Congress to dictate how Illinois should organize its courts. Addressing the Illinois Constitution, Italia Foods notes that only courts in this state have the power to determine whether a matter is justiciable and within the subject matter jurisdiction of a circuit court. Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 199 Ill. 2d 325, 335-36 (2002). Thus, enabling

legislation could never be enacted in Illinois because it is beyond the General Assembly's power. Finally, Italia Foods argues that Chair King wrongly concluded that any alternative construction of the "if otherwise permitted" language would render it "doubly redundant." Chair King, 184 S.W.3d at 713. According to Italia Foods, Congress routinely includes language reflecting constitutional limitations on its powers in "an exercise of caution" (R.A. Ponte Architects, 382 Md. at 715, 857 A.2d at 15-16) and it should not be construed to have any further meaning.

We find unconvincing Chair King's analysis and conclude that the case is wrongly decided. The court's textual analysis and its review of the legislative history is unconvincing to rebut the presumption of state-court jurisdiction. First, the court failed to show that the TCPA's proviso reflects Congress's "explicit statutory directive" (Gulf Offshore, 453 U.S. at 478, 69 L. Ed. 2d at 791, 101 S. Ct. at 2875). Rather, the court merely determined that the "opt-in" approach would give full effect to the "if otherwise permitted" language and would not render it redundant. The court noted that Congress had elsewhere in the statute used more succinct and unqualified language to clarify that private claims may be brought in state courts and concluded that, by using the "if otherwise permitted" qualification, Congress necessarily intended something different, specifically, to give the states a voice in the matter with respect to private actions under section 227(b)(3). We disagree. It has been noted:

"[L]egislative bodies often refer to the pertinent constitutional principles underlying legislation even though such references may not, strictly, be required. For example, when Congress enacts legislation under its Commerce Clause power, it will often refer to the underlying constitutional principle or the constitutional provision. Legislation in the criminal law field sometimes will recite that it applies only to offenses committed after the effective

date of the statute, even though constitutional ex post facto principles would require the same result." R.A. Ponte Architects, 382 Md. at 714, 857 A.2d at 15-16.

We agree with the Mulhern court that the "if otherwise permitted" language reflects a congressional intention "that Federal claims remain subject to State procedural law: Congress is no doubt aware of the Supreme Court's long-standing recognition that States 'have great latitude to establish the structure and jurisdiction of their own courts' and 'may apply their own neutral procedural rules to federal claims, unless those rules are pre-empted by federal law.' [Citation.] The TCPA was crafted to accommodate State interests, while respecting the structure, jurisdiction, and procedural rules of State courts." Mulhern, 441 Mass. at 757-58, 808 N.E.2d at 780-81.

We also find persuasive the Court of Appeals of Maryland's reasoning that the first part of the phrase "if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State" (coupled with the legislative history, which we address below) refers to "neutral general jurisdictional and procedural laws and rules governing each state's court system." See R.A. Ponte Architects, 382 Md. at 711, 857 A.2d at 14. As that court explained, the word "otherwise" refers to state laws and rules other than substantive telemarketing laws (which are the subject of the TCPA), and the phrase "of court" reinforces this interpretation. R.A. Ponte Architects, 382 Md. at 711, 857 A.2d at 14. Congress, thus, left to state legislators or courts to determine proper venue (possibly in small-claims courts, which were the sponsor's preference) and not the issue whether the federal action should be entertained in state courts. R.A. Ponte Architects, 382 Md. at 711, 857 A.2d at 14. We also find persuasive the Maryland court's reasoning that the reference to "laws" does not mean state laws regulating telemarketing, because those laws were aimed at intrastate communications, whereas the TCPA targets interstate activity. "The federal statute was designed

to fill a void in state laws; it was not intended to be a statute limited by state laws which Congress deemed inadequate." R.A. Ponte Architects, 382 Md. at 713-14, 857 A.2d at 15 (further noting that, in many states, state supreme courts do not have constitutional authority to promulgate rules of practice and procedure). In this respect, we reject Chair King's criticism that any reading other than the "opt-in" approach renders the phrase doubly redundant.

As to the legislative history of the TCPA's private right of action, we find Chair King's analysis thereof even more problematic. The Texas Supreme Court seized upon Senator Hollings' statement that he expected that the states would act reasonably and permit their citizens to go to court to enforce the bill. However, the Chair King court did not analyze the context in which the statement was made. Senator Hollings commented:

" 'Small claims court or a similar court would allow the consumer to appear before the court without an attorney. The amount of damages in this legislation is set to be fair to both the consumer and the telemarketer. However, it would defeat the purposes of the bill if the attorneys' costs to consumers of bringing an action were greater than the potential damages. I thus expect that the States will act reasonably in permitting their citizens to go to court to enforce this bill.' " R.A. Ponte Architects, 382 Md. at 710-11, 857 A.2d at 13-14, quoting 137 Cong. Rec. 30821-22 (1991) (statement of Senator Hollings).

It is clear from the context that the Senator, in the final sentence above, was referring to his concern about attorney fees and noting that access to small-claims courts would permit plaintiffs to avoid this burden. Thus, in our view, the Chair King court failed in its legislative history analysis to show that the "unmistakable implication" (Gulf Offshore, 453 U.S. at 478, 69 L. Ed. 2d at 791, 101 S. Ct. at 2875) of the TCPA's legislative history is that the presumption of state-court

jurisdiction is rebutted. We believe the legislative history reflects a congressional intent to permit states to determine which of their courts may hear TCPA claims.

Turning to Chair King's supremacy-clause and efficiency concerns, we note that, in rejecting the "opt-out" approach, the court referred to the "explicit" statutory directive and the TCPA's purpose. Chair King, 184 S.W.3d at 716. Here, again, the court's analysis is unpersuasive and fails to rebut the presumption of state-court jurisdiction. The court dismissed supremacy-clause concerns by reasoning that giving effect to the "conditional" proviso that Congress drafted could not run afoul of the supremacy clause. Chair King, 184 S.W.3d at 715. This analysis is problematic because it presumes that Chair King's reading of the proviso is correct. As we determined above, contrary to the Chair King court, the proviso is ambiguous. The Chair King court also found it reasonable to presume that Congress recognized the burden on state courts of TCPA claims and that it chose to allow the states to have control over their court dockets. Chair King, 184 S.W.3d at 715-16. In this respect, it concluded that the TCPA's remedies were meant to assist state regulation "if a state so desired, not to create an independent regulatory framework for a potential flood of individual state-court lawsuits." Chair King, 184 S.W.3d at 716. We fail to see how this interpretation necessarily flows from the statute's purpose and wording. In our view, it is more plausible (especially in light of the statute's legislative history) that Congress intended to assist state regulation by creating a private right of action under the TCPA and not requiring any action on the states' parts to permit TCPA claims to be brought in their courts. We find the Chair King court's arguments insufficient to rebut the presumption of state-court jurisdiction, as that intention must be "explicit," "unmistakable," or shown by "a clear incompatibility between state-court jurisdiction and federal interests." Gulf Offshore, 453 U.S. at 478, 69 L. Ed. 2d at 791, 101 S. Ct. at 2875.

Finally, we are unpersuaded by the Texas Supreme Court's analysis and adoption of the "opt-in" approach. The court relied on the dictionary definitions of "otherwise" and "permit" in concluding that they suggest "the necessity of affirmative state action to activate the TCPA's private cause of action." Chair King, 184 S.W.3d at 716. We fail to see how this conclusion necessarily results from terms that mean " 'DIFFERENTLY' " and " 'ALLOW.' " Chair King, 184 S.W.3d at 716, quoting Webster's Third New International Dictionary (1961). Further, we note that another criticism of the "opt-in" approach is that it might run afoul of the tenth amendment. It has been noted that "requiring states to 'opt-in' before they could hear private damages actions under the TCPA would be akin to Congress commanding state legislatures to legislate" (Accounting Outsourcing, 329 F. Supp. 2d at 796). See also MLC Mortgage, 2009 OK 37, ¶14, 212 P.3d 1199, 1205; Consumer Crusade, 121 P.3d at 353.

Having rejected Chair King's rationale for adopting the "opt-in" approach, we conclude that the "acknowledgment" theory is the correct approach to analyzing the TCPA's private right of action. In light of the ambiguity in the statutory language, we find guidance, as noted above, in the legislative history and the statute's purpose. We also find that constitutional considerations warrant adoption of the "acknowledgment" approach and not the "opt-out" or "opt-in" theory.

The Howlett Court stated that three corollaries follow from the proposition that federal law is the law of the land in the states: (1) when the parties and controversy are properly before it, a state court may not deny a federal right in the absence of a valid excuse; (2) "An excuse that is inconsistent with or violates federal law is not a valid excuse. The supremacy clause forbids state courts to dissociate themselves from federal law because of disagreement with its content or a refusal to recognize the superiority or authority of its source"; and (3) the Court must act with caution before

deciding that a state court is obligated to entertain a claim when the state's neutral rules of court administration obligate the court to refuse jurisdiction; in other words, states have great latitude in structuring their courts, establishing their jurisdiction, and applying their neutral procedural rules (unless those rules are preempted by federal law).[10] Howlett, 496 U.S. at 369-72, 110 L. Ed. 2d at 348-51, 110 S. Ct. at 2439-41.

The Illinois Constitution provides that Illinois circuit courts have "original jurisdiction of all justiciable matters except when the Supreme Court has original and exclusive jurisdiction relating to redistricting of the General Assembly and to the ability of the Governor to serve or resume office. Circuit Courts shall have such power to review administrative action as provided by law." (Emphasis added.) Ill. Const. 1970, art. VI, §9. Although the legislature can create new justiciable matters via legislation creating rights and duties with no common-law or equitable counterparts, any such actions do not confer jurisdiction on the circuit courts. Belleville Toyota, 199 Ill. 2d at 335. Rather, except in the area of administrative review, the circuit court's jurisdiction is conferred by the constitution, not the legislature. Belleville Toyota, 199 Ill. 2d at 335-36. "The General Assembly, of course, has no power to enact legislation that would contravene article VI." Belleville Toyota,

---

[10]The Court noted that only on three occasions had it found a valid excuse for a state court's refusal to entertain a federal cause of action, each of which involved a neutral rule of judicial administration: first, where neither party was a resident of the forum; second, where the cause of action arose outside the territorial jurisdiction; and third, where the Court allowed a state court to apply the doctrine of forum non conveniens to bar adjudication of a Federal Employer Liability Act case, so long as the doctrine was impartially enforced. Howlett, 496 U.S. at 374-75, 110 L. Ed. 2d at 325, 110 S. Ct. at 2442.

199 Ill. 2d at 335. Thus, our constitution precludes and would invalidate any legislative action purporting to "opt-in" or "opt-out" of the TCPA. Furthermore, it has been noted that there is a tension between an interpretation of the TCPA that requires a state to pass enabling legislation (i.e., to "opt-in") before a private action may be brought in that state's courts and "the rule of presumed enforceability derived from the Supremacy Clause." Portuguese American Leadership Council, 956 A.2d at 676-77. It has been further noted that the presumption of state-court jurisdiction is "compelling where, as under the TCPA, private litigants have no recourse to Federal courts." Mulhern, 441 Mass. at 757, 808 N.E.2d at 780. Finally, we noted above the tenth amendment concerns in terms of Congress "commanding state legislatures to legislate" (Account Outsourcing, 329 F. Supp. 2d at 796).

As to the "opt-out" approach, the court in another case has commented:

"It would be an extreme anomaly, in the unusual situation where state courts have apparently been given exclusive jurisdiction over the federal cause of action, for Congress to have intended that states could discriminate against the federal cause of action. ***

*** If Congress were to authorize such an unusual and unprecedented result, one would expect that it would do so expressly and unequivocally. Absent such a clear congressional statement, the normal rule precluding state law discrimination against federal causes of action should apply." R.A. Ponte Architects, 382 Md. at 715-16, 857 A.2d at 16-17.

See also Consumer Crusade, 121 P.3d at 354.

This approach raises supremacy-clause concerns in that it permits states to close their courts to federal claims for which Congress provided no federal forum. See Consumer Crusade, 121 P.3d at 354 (further noting that early cases failed to address this constitutional issue).

Although we agree with Italia Foods that the "acknowledgment" approach is the proper analytical framework, we disagree with its argument that we must follow First Capital Mortgage. Italia Foods argues that the First Capital Mortgage court independently analyzed the issue and adopted the "acknowledgment" approach, that the case is binding precedent, and that, even if the court did not expressly analyze the issue, the court's reference to the parties' agreement in that case would be irrelevant because courts have an independent duty to consider their subject matter jurisdiction.

In First Capital Mortgage, a mortgage company sued a bank, alleging that the bank sent it hundreds of unsolicited faxes for over two years. In the first count of its complaint, the mortgage company sought to recover under the TCPA. The trial court granted the bank's motion to dismiss that count. 735 ILCS 5/2--619 (West 2004). On appeal, the parties agreed that the interpretation of the TCPA's "if otherwise permitted" language should follow the "acknowledgment" theory. After noting that the "acknowledgment" theory comported with the Supreme Court's reasoning in Howlett, 496 U.S. at 367-72, 110 L. Ed. 2d at 347-51, 110 S. Ct. at 2438-41 (addressing the supremacy clause), and that the TCPA expressly grants a private right of action, the First District held that the "if otherwise permitted" language "allows state courts to apply 'neutral rule[s] of judicial administration' " to TCPA claims and that, if the rules bar such claims, state courts may dismiss them. First Capital Mortgage, 374 Ill. App. 3d at 742, quoting Howlett, 496 U.S. at 374, 110 L. Ed. 2d at 352, 110 S. Ct. at 2442. The court further concluded that, because no neutral rule of judicial administration

barred the mortgage company's TCPA claim against the bank, reversal of the dismissal was warranted. First Capital Mortgage, 374 Ill. App. 3d at 742.

First Capital Mortgage offers limited insight here because the parties in that case agreed that the "acknowledgment" approach was the correct interpretive framework. Further, other than noting that the approach comported with Howlett, the First Capital Mortgage court did not undertake any analysis of the interpretive theories that have developed, nor did it specifically address Chair King.

We further note that we find of limited guidance the FCC's statement concerning the TCPA. Italia Foods argues that Chair King ignored the FCC's "interpretation" of the TCPA. In 1992, the FCC adopted rules implementing the TCPA. In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 7 F.C.C.R. 8752 (1992) (1992 Report & Order). In discussing the private right of action under the statute, the FCC stated: "Absent state law to the contrary, consumers may immediately file suit in state court if a caller violates the TCPA's prohibitions on the use of automatic telephone dialing system[s] and artificial or prerecorded voice messages. §227(b)(3)."[11] 1992 Report & Order, 7 F.C.C.R. at 8780; see also F.C.C. DA No. 03--153, par. 206 (June 26, 2003) (language "suggests that Congress contemplated that [private actions were] a matter for consumers to pursue in appropriate state courts, subject to those courts' rules"). Italia Foods argues that Congress has not altered the statute's language since the FCC's statement and notes that the Chair King court did not consider the FCC's pronouncement. In its view, as courts are required

---

[11]The TCPA's operative language is the same with respect to suits to enforce prohibitions against telephone solicitations and unsolicited advertisements via fax machine. Compare 47 U.S.C. §227(b)(3) (2000) with 47 U.S.C. §227(b)(1)(A) (2000).

to defer to agencies' reasonable interpretations of federal statutes, the FCC's statement in its 1992 Report & Order is binding.

In reaching our decision, we note that the FCC's pronouncement, although ordinarily entitled to some deference (Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844, 81 L. Ed. 2d 694, 704, 104 S. Ct. 2778, 2782 (1984)), offers limited guidance because the FCC did not directly address the issue here.

In summary, we answer the first certified question in the negative. The Illinois General Assembly need not enact enabling legislation before private TCPA claims can be brought and enforced in Illinois state courts.

### B. Penalties/Assignability/Limitations Period

The second certified question asks: "Are the TCPA claims alleged in this case 'statutory penalties' under Illinois law? And if so: (a) Are those claims assignable under Illinois law? [and] (b) Does Illinois' two[-]year statutory penalty limitations period [(735 ILCS 5/13--202 (West 2002))] apply to such claims, as opposed to [the federal four-year limitations period for civil actions (28 U.S.C. §1658 (2000))]?" These issues, as parts of a certified question, present questions of law that we review de novo. Barbara's Sales, Inc. v. Intel Corp., 227 Ill. 2d 45, 57-58 (2007).

Preliminarily, we note that the first two parts of the second certified question are inartfully drafted, in that they appear to confuse several legal theories or concepts. In essence, the parties ask us to resolve whether the TCPA claim here was assignable; specifically, whether Eclipse properly assigned its TCPA claim to Hinman. Courts have taken two approaches in addressing this issue. The first approach, which is the essential question in the first part of the second certified question, asks whether the statute is a penal (as opposed to remedial) enactment. Generally, if a statute is

penal, claims thereunder are not assignable, because they are personal rights. See, e.g., Hart Conversions, Inc. v. Pyramid Seating Co., 658 N.E.2d 129, 131 (Ind. App. 1995) ("The general rule is that the right to collect a penalty is a personal right which is not assignable"); see also North Chicago Street R.R. Co. v. Ackley, 171 Ill. 100, 117 (1897) (in reviewing common law, noting that personal-injury actions are not assignable). The second approach, which is the primary question raised in subpart (a) of the second certified question, asks whether recovery under the statute is personal to the injured party. This question is relevant because the only causes of action that are not assignable in Illinois are personal-injury and related actions. Kleinwort, 181 Ill. 2d at 225. Either approach can provide an independent basis upon which to determine whether a TCPA claim is assignable. Because current Illinois law does not favor one approach over the other and because it is not clear to us that our supreme court would choose one approach over the other, we address both approaches.

### 1. Penal v. Remedial Statute

The trial court found that the TCPA presumes damages for economic injury that are difficult to quantify and, therefore, the statute is remedial and not penal. The court found Valley Forge Insurance Co. v. Swiderski Electronics, Inc., 223 Ill. 2d 352 (2006), instructive and further found that the TCPA implicates privacy and property interests and that property interests are assignable. Finally, the court relied on the rule that claims are generally assignable.

Relying on the test in McDonald's Corp. v. Levine, 108 Ill. App. 3d 732 (1982), defendants argue that, in light of the TCPA's silence on assignability, we must look to Illinois law, which provides that TCPA claims are statutory penalties and that such penalty claims are not assignable.

In McDonald's, this court stated:

"A statute is a statutory penalty if [(1)] it imposes automatic liability for a violation of its terms and [(2)] the amount of liability is predetermined by the act and [(3) that liability is] imposed without actual damages suffered by the plaintiff. [Citation.] A statute is remedial when it gives rise to a cause of action to recover compensation suffered by the injured person. [Citation.] *** [A] statute is remedial and not penal where it imposes liability only when actual damage results from a violation. In such a case, liability is contingent upon damage being proven by the plaintiff. Under a penal statute, liability is not contingent but imposed automatically when a violation of the statute is established." McDonald's, 108 Ill. App. 3d at 738.

This court further stated: "A statute requiring the payment of actual and punitive damages by a wrongdoer does not constitute a statutory penalty." McDonald's, 108 Ill. App. 3d at 739 (holding that section 14--6 of the Eavesdropping Act, which lists three civil remedies available for violations thereunder--injunctive relief and actual and punitive damages--is not a statutory penalty).

The TCPA provides that a plaintiff may bring an action: (1) for an injunction; (2) for "an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater"; or (3) both an injunction and the greater of the actual damages amount or $500 per violation. 47 U.S.C. §227(b)(3) (2000). Further, a court has discretion to treble the $500 amount in cases where it finds that the defendant willfully or knowingly violated the statute or regulations. 47 U.S.C. §227(b)(3) (2000). In its third amended complaint, Italia Foods sought injunctive relief and $500 in damages for each violation.

Here, defendants argue that the monetary relief Italia Foods seeks--$500 in damages per violation--constitutes a statutory penalty because it is not intended to compensate plaintiffs for any

actual damages incurred from the "pennies" they may have lost from a single unsolicited fax. Further, they contend that the TCPA's $500 damages award requires no proof of actual injury. In defendants' view, Italia Foods' ability to potentially recover actual damages for alleged TCPA violations does not preclude application of the TCPA's preset $500 damages award for each unsolicited fax.

We disagree with defendants' argument that McDonald's controls. That case provides little interpretive assistance here because its test is not easily applied to a statute like the TCPA, which contains both a provision for actual damages and a statutory penalty component. We also find defendant's reliance on Landis v. Marc Realty, L.L.C., 235 Ill. 2d 1 (2009), to be misplaced. That case involved a provision in Chicago's landlord and tenant ordinance, and the issue presented was whether the provision imposed a statutory penalty for the purposes of the two-year limitations period in section 13--202 of the Code of Civil Procedure (735 ILCS 5/13--202 (West 2004)). The supreme court, applying the McDonald's test, held that the provision was a penalty because it imposed automatic liability for violations thereunder, set forth a predetermined amount of damages, and imposed liability regardless of the plaintiffs' actual damages. Landis, 235 Ill. 2d at 13. We conclude that Landis does not compel a conclusion here that the TCPA is penal, because, in assessing the final prong of the McDonald's test (i.e., that the penalty is imposed without regard to the actual damages suffered by the plaintiff), the supreme court noted that, in contrast to other provisions of the landlord and tenant ordinance, the provision at issue "does not specifically allow a plaintiff to recover actual damages." Landis, 235 Ill. 2d at 14. Significantly, the TCPA provides that option. 47 U.S.C. §227(b)(3)(B) (2000).

We find Scott v. Ass'n for Childbirth at Home, International, 88 Ill. 2d 279 (1981), instructive. In Scott, the supreme court, in the context of addressing a due process argument, held that the Fraud Act was not penal. Scott, 88 Ill. 2d at 288. The court noted that the statute "is a regulatory and remedial enactment intended to curb a variety of fraudulent abuses and to provide a remedy to individuals injured by them. *** The [Fraud] Act is clearly within the class of remedial statutes which are designed to grant remedies for the protection of rights, introduce regulation conducive to the public good, or cure public evils." Scott, 88 Ill. 2d at 288. The court found that the fact that the Fraud Act contains a civil penalty component does not render it a penal statute. Scott, 88 Ill. 2d at 288. The supreme court stated that "the penalty is but one part of the regulatory scheme, intended as a supplemental aid to enforcement rather than as a punitive measure." Scott, 88 Ill. 2d at 288.

We find the Scott court's analysis and characterization of the civil penalty provision in the Fraud Act persuasive in analyzing the TCPA. The Fraud Act provides that a plaintiff may bring an action for actual damages (815 ILCS 505/10a (West 2008)) and that the Attorney General or a State's Attorney may bring an action seeking an injunction, restitution, or a civil penalty (815 ILCS 505/7 (West 2008)). Similarly, the TCPA provides that a plaintiff may bring an action for injunctive relief and/or the greater of actual damages or $500 per violation; it also contains a treble-damages provision. 47 U.S.C. §227(b)(3) (2000). Further, another portion of the statute contains a federal enforcement component that authorizes state attorneys general to bring civil actions in federal court on behalf of their residents to obtain injunctive relief and to recover monetary damages; in addition, the FCC may intervene in any such action. 47 U.S.C. §227(f)(1), (f)(3) (2000).

We are further persuaded by the fact that it appears that the majority of courts to consider the issue have concluded that the TCPA is a remedial statute, at least in part on the basis, as did the Scott court (Scott, 88 Ill. 2d at 288), that the statute's purpose (discerned in part from a reading of its legislative history) warrants this result. See, e.g., Motorists Mutual Insurance Co. v. Dandy-Jim, Inc., 182 Ohio App. 3d 311, 322-23, 2009--Ohio--2270, ¶¶35, 36 (holding that TCPA is a remedial law because the purpose of the statutory damages provision is to liquidate uncertain actual damages and to encourage victims to bring suit; damages are set at fair amount; treble-damages provision is not punitive, because it is imposed irrespective of any intent to violate the law); Penzer v. Transportation Insurance Co., 545 F.3d 1303, 1311 (11th Cir. 2008) (citing cases and noting that TCPA's statutory damages provision is not punitive); Terra Nova Insurance Co. v. Fray-Witzer, 449 Mass. 406, 869 N.E.2d 565, 575 (2007) (applying New Jersey law and holding that the TCPA is a remedial statute, where Congress's purpose was to protect fax machine owners from unsolicited advertisements and where the statutory damages remedy flows to the consumer and not the government; possibility that statutory damages could be greater than actual harm suffered does not transform TCPA into a penal statute, as this would ignore nature of penal statute and would conflict with New Jersey's mandate to liberally interpret insurance policies in favor of the insured); Melrose Hotel Co. v. St. Paul Fire & Marine Insurance Co., 432 F. Supp. 2d 488, 509 n.10 (E.D. Penn. 2006), aff'd sub nom. Subclass 2 v. Melrose Hotel Co., 503 F.3d 339 (3d Cir. 2007); Universal Underwriters Insurance Co. v. Lou Fusz Automotive Network, Inc., 401 F.3d 876, 881 (8th Cir. 2005) (holding that fixed damages award provides incentive for private parties to enforce TCPA: "Whether we view the fixed award as a liquidated sum for actual harm or an incentive for aggrieved parties to act as private attorneys general, or both, it is clear that the fixed amount serves more than purely punitive

or deterrent goals. Also, the fact that Congress elected to make treble damages available separate from fixed damages strongly suggests that the fixed damages serve additional goals other than deterrence and punishment"); Hooters of Augusta, Inc. v. American Global Insurance Co., 272 F. Supp. 2d 1365, 1375-76 (S.D. Ga. 2003) (TCPA is a remedial statute, where it redresses harms to individual fax machine owners who are harmed by the receipt of unsolicited advertisements, where the damages issue to the individual and not to a third party, and where, although statutory damages do not closely correspond to actual damages, this fact does not convert a remedial statute to a penal one), aff'd, 157 Fed. Appx. 201 (11th Cir. 2005); Western Rim Investment Advisors, Inc. v. Gulf Insurance Co., 269 F. Supp. 2d 836, 849 (N.D. Tex. 2003). But see Kruse v. McKenna, 178 P.3d 1198, 1200-01 (Colo. 2008) (holding that state law determines matter of assignability and further holding that, under Colorado law, TCPA claims are penal and, therefore, not assignable, because the TCPA created a new and distinct cause of action, the monetary recovery sought requires no proof of actual damages, and any recovery exceeds any actual damages);[12] Kaplan, 266 A.D.2d at 849, 698 N.Y.S.2d at 799 (TCPA's statutory damages provision is punitive rather than compensatory, where the legislative history shows that the statute was intended to provide a remedy to consumers and to encourage them to sue; statutory penalty provides incentive for consumers to enforce statute; penalty need not be measured by actual loss incurred where it is imposed as a punishment for a violation).

---

[12]But see United States Fax Law Center, Inc., 476 F.3d at 1120 (holding that TCPA claims are not assignable under Colorado law because they are in the nature of personal-injury privacy claims and declining to address whether TCPA claims are unassignable because they are penal).

In summary, we conclude that the TCPA is a remedial statute and, given that defendants have not advanced an argument that claims under remedial statutes are unassignable, we decline to hold that TCPA claims are not assignable by virtue of being remedial.

### 2. Whether the TCPA Claim Here is a Personal-Injury Claim
### and is, Therefore, Not Assignable

Next, defendants argue that the TCPA claim, even if not penal, is not assignable. Defendants address the trial court's rationale, where, relying on Valley Forge and Kleinwort, it found that TCPA claims are assignable.

In Kleinwort, Kleinwort sued Quantum and Quantum counterclaimed, asserting common-law fraud and seeking punitive damages in connection with the sale of a brokerage firm. During the pendency of the litigation, Quantum assigned its interest in the lawsuit to its two shareholders. Kleinwort challenged the shareholders' standing to pursue the punitive damages claim. The supreme court held that the assignees could recover punitive damages on the common-law fraud counterclaim. Kleinwort, 181 Ill. 2d at 226. The court noted that, traditionally, courts examined the assignability issue by considering whether the action would survive the death of the owner. Kleinwort, 181 Ill. 2d at 220. The supreme court rejected this approach, concluding that the "primary" consideration in determining the assignability of causes of action is whether such assignments would violate public policy. Kleinwort, 181 Ill. 2d at 224 ("[t]his court has held that a cause of action cannot be assigned if such assignment violates public policy, even if such an action would otherwise survive the death of the owner"). The court criticized the survival analogy, noting:

> "This court long ago used the survival analogy when considering whether a cause of action
> is assignable, not whether punitive damages standing alone are assignable. This court has

not applied the survival analogy to invalidate part of an assignment where the parties sought an assignment of the entire action." Kleinwort, 181 Ill. 2d at 224.

The court further noted that "assignability is the rule and nonassignability is the exception." Kleinwort, 181 Ill. 2d at 225. It stated that, in Illinois, "the only causes of action that are not assignable are torts for personal injuries and actions for other wrongs of a personal nature, such as those that involve the reputation or feelings of the injured party." Kleinwort, 181 Ill. 2d at 225. After further noting that the issue depends on the facts and circumstances of the case and that courts apply a strict test in determining whether an assignment violates public policy, the court held that allowing the assignees to seek punitive damages did not violate public policy. Kleinwort, 181 Ill. 2d at 226. The court found significant that the assignees were Quantum's shareholders at the time of the alleged fraud, that one shareholder-assignee was intimately involved in the negotiations for the purchase of an entity that served as the basis for the alleged fraud, that the assignees did not "shop around" for the fraud claim, and that the same defendants would be involved regardless of the assignment. Kleinwort, 181 Ill. 2d at 226-27.

Defendants argue that Kleinwort is inapposite. They do not dispute that punitive damages that are part of an underlying claim, which defendants refer to as "ancillary punitive damages," are assignable. Instead, defendants urge that "independent statutory penalties," such as those under the TCPA, are not assignable because they are personal to the injured party. In their view, a party's actions underlying TCPA claims should constitute the sort of personal injury contemplated by Kleinwort as being unassignable, and public policy concerns should act to bar Eclipse's alleged assignment of its TCPA claim to Hinman.

Italia Foods preliminarily responds that the assignment issue is of no import because the statute of limitations has been tolled (a reference to the third certified question) in this case since the filing of the initial complaint in June 2003. We reject Italia Foods' argument that, if we adopt their tolling argument, we need not address the assignment issue. The status of Hinman as an assignee of Eclipse's claim goes to his standing to bring suit. Standing, which is a jurisdictional requirement, must be continuous throughout the suit. Eclipse Manufacturing Co. v. M&M Rental Center, Inc., 521 F. Supp. 2d 739, 742 (N.D. Ill. 2007).

Next, Italia Foods responds that defendants are incorrect as to the assignment issue. Italia Foods relies on Kleinwort and the principle that corporations have the power to sell, convey, pledge, lease, and otherwise dispose of their property and assets. See 805 ILCS 5/3.10 (West 2008) (listing the general powers of a corporation); see also Grunloh v. Effingham Equity, Inc., 174 Ill. App. 3d 508, 518 (1998) ("it has long been recognized that corporations generally possess the power to assign choses in action, provided the assignments are made for a legitimate corporate purpose and violate no express restrictions in the corporate charter"). Italia Foods argues that, as in Kleinwort, Hinman is not a stranger to the underlying claim, as he was the sole shareholder and president of Eclipse when defendants sent the unsolicited fax advertisements that gave rise to the TCPA claim. Also, as in Kleinwort, the "assignment" was the product of the sale of the corporation after litigation had commenced. Thus, in Italia Foods' view, Eclipse's "assignment" of its TCPA claim to Hinman did not violate public policy, because Hinman owned and ran Eclipse at the time the claim arose and was intimately involved in it.

In Valley Forge, upon which the trial court relied, the supreme court addressed whether TCPA claims were covered by the advertising-injury provisions in commercial and general liability

insurance policies. The primary policy at issue defined an advertising injury as: " '[O]ral, written, televised or videotaped publication of material that violates a person's right of privacy.' " Valley Forge, 223 Ill. 2d at 364. The underlying complaint did not assert a common-law tort for invasion of privacy, but asserted a TCPA claim. The court held that the insurer had a duty to defend the TCPA claim under the policy's definition of advertising injury because the TCPA claim vindicated the same injuries as a common-law action for violation of privacy. Valley Forge, 223 Ill. 2d at 365. The court noted that the "receipt of an unsolicited fax advertisement implicates a person's right of privacy insofar as it violates a person's seclusion, and such a violation is one of the injuries that a TCPA fax-ad claim is intended to vindicate." Valley Forge, 223 Ill. 2d at 365 (citing "overwhelming" case law). As to the specific policy language in the case, the court, relying on the dictionary definitions of, inter alia, "right of privacy," further held that the terms refer to both an interest in seclusion and an interest in the secrecy of personal information. Valley Forge, 223 Ill. 2d at 368. Accordingly, the court concluded that unsolicited fax advertisements fall within the category of material that violates a person's seclusion. Valley Forge, 223 Ill. 2d at 368. The court determined that, given its holding, it did not need to reach the issue whether the insurers had a duty to defend their insured pursuant to the policies' property-damage provisions. Valley Forge, 223 Ill. 2d at 379.

We find Valley Forge distinguishable. That case involved advertising-injury provisions in insurance policies held by an individual and not a corporation, and the court did not address assignability. The court determined only that TCPA claims vindicate the same injuries as invasion-of-privacy claims and, therefore, unsolicited fax advertisements implicate a person's right to privacy. Valley Forge, 223 Ill. 2d at 365-68.

We find Eclipse instructive. In Eclipse, which involved the same plaintiffs as this case but a different defendant, the court held that Hinman had standing as an assignee to pursue Eclipse's TCPA claim and it granted Hinman's and Italia Foods' motion for leave to file a second amended class action complaint naming them as plaintiffs. The court reviewed corporation law and noted Kleinwort's statement that only torts for personal injuries and actions for other wrongs of a personal nature are unassignable and noted that the relevant inquiry was whether TCPA claims are actions for personal injuries. Eclipse, 521 F. Supp. 2d at 743. The court concluded that the TCPA is partly intended to protect privacy interests. Eclipse, 521 F. Supp. 2d at 743. The court noted that a privacy tort is a personal-injury action because the right protected is a personal right. Eclipse, 521 F. Supp. 2d at 743. However, the court also determined that a corporation "has no cause of action for invasion of privacy other than intrusions upon the use of its own name or identity." Eclipse, 521 F. Supp. 2d at 743. It held that corporations bringing TCPA claims may assert only the property interests the TCPA was designed to protect and, therefore, their TCPA claims are assignable under Illinois law. Eclipse, 521 F. Supp. 2d at 743-44; see also Kleinwort, 181 Ill. 2d at 225 (only torts for personal injuries and actions for other wrongs of a personal nature are unassignable). The court noted that Valley Forge did not foreclose the court's holding because that case did not reach the issue whether a corporation had standing to assert privacy interests under the TCPA; rather, Valley Forge involved an individual doing business as a private investigation business, and the supreme court's holding was that TCPA claims implicate "a person's right to privacy" (emphasis added) (Valley Forge, 223 Ill. 2d at 365). Eclipse, 521 F. Supp. 2d at 743-44.

We conclude, as did the Eclipse court, that Eclipse could and did assign its TCPA claim to Hinman. As the Kleinwort court noted, assignability is the rule, not the exception, and is determined

primarily by considering public policy issues, not the survival analogy. Kleinwort, 181 Ill. 2d at 224-25. Kleinwort also clearly states that the only unassignable claims are those involving personal-injury torts and other claims asserting personal wrongs. Kleinwort, 181 Ill. 2d at 225. We find persuasive the Eclipse court's analysis and its conclusion that corporations may assert in TCPA claims only the property and not the privacy interests the TCPA was designed to protect. See Eclipse, 521 F. Supp. 2d at 743-44; see also Resource Bankshares Corp. v. St. Paul Mercury Insurance Co., 407 F.3d 631, 639 (4th Cir. 2005) ("Junk faxes cause some economic damage"); American States Insurance Co. v. Capital Associates of Jackson County, Inc., 392 F.3d 939, 943 (7th Cir. 2004) (TCPA protects company's property rights in that it avoids consumption of the recipient's ink and paper). Accordingly we conclude that a corporation's, like Eclipse's, TCPA claims are assignable.

In summary, we conclude that the TCPA claim here was properly assigned from Eclipse to Hinman.[13]

### 3. Statute of Limitations

Because the TCPA claim in this case was assignable and, as we determine below, the limitations period is measured to the initial filing of Eclipse's complaint in 2003, we conclude that we need not address the question of the appropriate statute of limitations presented in this portion of the second certified question.

Whether the two-year or four-year limitations period applies need not be resolved. Eclipse filed its initial complaint on June 13, 2003, and alleged that defendants sent it four unsolicited fax

---

[13]In so concluding, we express no opinion herein on the meaning of "privacy" in the context of insurance coverage law.

advertisements in July and August 2002, or about one year earlier. We disagree with defendants, who assert without explanation that we must resolve the issue of the appropriate statute of limitations and determine if the limitations period for the initial complaint goes back two years under section 13--202 of the Code of Civil Procedure to June 13, 2001, or four years under section 1658 of Title 28 of the United States Code to June 13, 1999. It is clear to us that, under either limitations period, the complaint was timely filed.

### C. Tolling of Claim

The third certified questions asks: "If the claim is not assignable, then should absent class members' putative claims against defendants be treated as tolled when no class representative with proper standing represented the putative class for a 27-month period?" Because we determined above that the TCPA claim is assignable, we need not address the third certified question.

### IV. CONCLUSION

For the foregoing reasons, we answer the first certified question in the negative. As to the second certified question, we modify the first two parts of the question and conclude that the TCPA claim here is remedial and assignable and, alternatively, that (whether or not it is remedial) it is assignable because it does not constitute a personal-injury action. Further, we conclude that we need not answer subsection (b) of the second certified question (concerning the appropriate statute of limitations) and the third certified question. We remand the cause for further proceedings consistent with this opinion.

Certified questions answered; cause remanded.

O'MALLEY and SCHOSTOK, JJ., concur.